United States Court of Appeals,

Fifth Circuit.

No. 94-50702.

Harlan D. VANDER ZEE, Plaintiff-Appellant,

v.

Janet RENO, Attorney General, The Honorable Attorney General of the United States, et al., Defendants,

United States of America, et al., Defendants-Appellees.

Feb. 2, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before GARWOOD, DUHÉ and PARKER, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Harlan D. Vander Zee (Vander Zee) appeals the district court's dismissal of his *Bivens* action against federal prosecutors and claims for declaratory and injunctive relief against the United States based upon alleged violations of due process arising from a settlement agreement entered into between the Department of Justice and his former employer. We affirm.

## Facts and Proceedings Below

Vander Zee was formerly employed as an executive vice-president at Stone Oak National Bank (Stone Oak) in San Antonio, Texas. During his tenure at Stone Oak, Vander Zee became aware of large cash deposits being made by Mario Alberto Salinas-Trevino (Salinas). After consulting with the bank's president, Herbert E. Pounds, Jr. (Pounds), Vander Zee properly reported these deposits to federal authorities and apparently continued to do so

1

throughout the period in question.

In March 1989, Salinas was indicted and arrested on drug trafficking charges, although he subsequently escaped from custody. On May 10, 1990, the United States Attorney obtained a superseding indictment naming Pounds and Vander Zee, which alleged violations of federal money laundering statutes relating to the handling of the Salinas deposits. After his indictment, Vander Zee tendered his resignation to Stone Oak by letter dated May 22 pursuant to a formal resolution by the Board of Directors. Although the charges lodged against Pounds and Vander Zee proceeded to trial, the district court granted a Motion for Judgment of Acquittal by Vander Zee and Pounds at the close of the government's case-in-chief.

However, the government continued to pursue five related civil forfeiture actions against assets seized at the time of Salinas' arrest. Although Salinas' interest in these assets was defaulted at the time of his escape from custody, Stone Oak remained a party to the forfeiture actions by virtue of having filed a lienholder's claim. Among these assets were nine certificates of deposit held by Stone Oak with a principal face value of $850,000 that had been pledged as security for loans made by the bank. Stone Oak retained possession of the certificates of deposit pending the outcome of the litigation. Ultimately, these forfeiture actions were consolidated for purposes of settlement, and the government and Stone Oak entered into a "Stipulation and Settlement Agreement and Hold Harmless Agreement" (Agreement) and Addendum. The Agreement and Addendum provided that Stone Oak would retain the certificates

of deposit to apply towards its recapitalization "in order to achieve and satisfy the capital and financial requirements as set forth by the Office of the Comptroller of the Currency (OCC) in order to remain and maintain itself as a viable, financial and banking institution in the community."  In exchange, Stone Oak released any claim to the assets sought in the remaining forfeiture actions.

However, the Agreement and Addendum contained additional recitals and conditions which are relevant to the present action. Among these conditions was that

> "Stone Oak National Bank in recognition of the allegations concerning the conduct of Herbert E. Pounds, Jr. and Harlan D. Vanderzee [sic], as set forth in the verified complaint for forfeiture in *United States v. U.S. Currency Including Nine (9) Certificates of Deposit, et al,* SA-90-CA-113, agrees to provide no further attorney fees nor other forms of financial assistance to Herbert E. Pounds, Jr. and Harlan D. Vanderzee [sic] except for such within the normal and usual course of any other banking customer's business, or unless the Bank becomes legally obligated to do so."

The Agreement contained additional recitals impugning the conduct of Pounds and Vander Zee.[1]  The Addendum further required Stone Oak

---

[1]For instance,

> "[t]he Bank asserts its innocence to the forfeiture of its interests in the Respondent Properties of the five (5) civil forfeiture cases in claiming that the Bank had no knowledge of and gave no consent to the allegedly unlawful money laundering activities performed by Herbert E. Pounds, Jr. and Harlan D. Vanderzee [sic], former employees of the Bank, which allegedly unlawful activities involved the Respondent Properties."

While the Agreement acknowledged the acquittal of Pounds and Vander Zee, it further noted,

> "their acquittal in that criminal case does not

3

to provide "assurances in writing that Stone Oak National Bank shall not rehire Herbert E. Pounds, Jr., or Harlan D. Vander Zee [sic] in any capacity, because of the poor judgment they exercised in dealing with Mario Salinas."  The Agreement and Addendum were expressly made contingent upon approval by the district court, which was obtained, and an order accepting the settlement was entered by the district court on August 14, 1992.

On August 13, 1993, Vander Zee filed this suit against a host of governmental and private defendants.  However, we are now concerned only with Vander Zee's claims against the federal officials sued in their individual capacities and certain claims against the United States as these claims presently before us on this appeal were dismissed and severed from the original action.[2] The individual defendants to the claims now before us are former Assistant Attorney General Robert S. Mueller, III, former United States Attorney Ronald Ederer, former Assistant United States Attorney Jack C. Frels, and United States Attorney Helen M.

establish Stone Oak National Bank as an innocent lienholder in either of the five (5) civil forfeiture cases which are the subject of this Agreement.  The acquittal in that criminal case merely established that the trier of fact in that case had reasonable doubt as to their alleged criminal conduct as set forth in the criminal indictment against them."

[2]Other original defendants who are not before this Court for the purposes of the present appeal due to the severance below of the actions against them are private defendants Stone Oak National Bank, Stone Oak Bankshares, Inc., and Fidelity & Deposit Company of Maryland.  The United States was substituted below for governmental defendants Janet Reno, Attorney General;  Eugene Ludwig, Comptroller of the Currency;  and Lloyd Bentsen, Secretary of the Treasury;  each sued in their official capacities, pursuant to the Federal Tort Claims Act (FTCA).

Eversberg.[3]  Vander Zee brought *Bivens* actions against these individual defendants claiming that the recitals and conditions contained in the Agreement and Addendum operated to deprive him of protected liberty and property interests in violation of the Due Process Clause of the Fifth Amendment.  Vander Zee also asserted state law tort claims against the individual defendants and the United States pursuant to the Federal Tort Claims Act (FTCA).  Finally, Vander Zee asserted claims under the Administrative Procedure Act (APA) as well as seeking various forms of declaratory and injunctive relief against the United States.

The defendants filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), which were granted by the district court by order of June 6, 1994.  The district court held that (1) Vander Zee's APA claims should be dismissed because the Agreement and Addendum were settlement decisions within the "exclusive discretion" of the Department of Justice, and therefore were not reviewable pursuant to § 701(a)(2) of the APA;  (2) the *Bivens* claims should be dismissed because Vander Zee failed to allege the violation of any constitutionally protected interest, or alternatively, the individual defendants were entitled to qualified immunity because the interests allegedly infringed were not "clearly established;"  and (3) the FTCA claims should be dismissed

---

[3]The district court determined that all claims against United States Attorney Eversberg should be dismissed not only pursuant to the United States' Motion to Dismiss, but also because there were no *Bivens* claims asserted against her individually and because she had never been properly served.  In the present appeal, Vander Zee does not complain of the dismissal of the claims against Eversberg.

5

for lack of subject matter jurisdiction because Vander Zee had failed to first present the claims to the Department of Justice as required by 28 U.S.C. § 2675, and additionally because the claims for defamation and interference with contractual rights fell within the sovereign immunity reserved by § 2680(h).[4]  These claims, which are those now before us, were subsequently severed from the original action, and a final judgment was entered on August 26, 1994.[5]

## Discussion

We review the district court's dismissal under Rules 12(b)(1) and 12(b)(6) *de novo,* taking the allegations of the complaint to be true.  *Carney v. Resolution Trust Corp.,* 19 F.3d 950, 854 (5th Cir.1994).  The district court's dismissal will be affirmed only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.  *Id.*

## I. Qualified Immunity

The qualified immunity defense affords government officials

---

[4]Vander Zee presents no points of error with respect to his claims under the APA or the FTCA.  Accordingly, the district court's disposition of these claims is affirmed.

[5]The government suggests in its brief that this Court lacks jurisdiction to hear this appeal because the district court failed to certify a final judgment pursuant to Fed.R.Civ.P. 54(b).  However, Rule 54(b) certification is required only when the district court directs the entry of a final judgment with respect to less than all of the parties or claims presented in a single action.  When the district court severed the claims against the individual defendants and the United States from the original action, it created two separate actions.  The district court then entered a judgment dismissing all of the claims before us today.  Therefore, no Rule 54(b) certification was required to render the judgment final and appealable. *See United States v. O'Neil,* 709 F.2d 361, 368-69 (5th Cir.1983).

not just immunity from liability, but immunity from suit. *Mitchell v. Forsyth,* 472 U.S. 511, 525-26, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* (*citing Harlow v. Fitzgerald,* 457 U.S. 800, 817-19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Even limited discovery on the issue of qualified immunity "must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Mississippi State Employment Serv.,* 41 F.3d 991, 994 & n. 10 (5th Cir.1995) (emphasis in original). However, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). We agree with the district court that Vander Zee failed to allege the violation of any constitutionally protected interest, at least not of any that was clearly established, and therefore, dismissal pursuant to Rule 12(b)(6) was proper.

Vander Zee alleges that in drafting the conditions of the Agreement and Addendum, the defendants acted to deprive him of various liberty and property interests in violation of the Due Process Clause of the Fifth Amendment. Specifically, Vander Zee

7

urges that he was deprived of:  (1) his liberty interest in future employment within the savings and loan industry;  (2) his property interest in his employment with Stone Oak because the defendants both coerced his termination and prevented Stone Oak from re-hiring him;  and (3) his property interest in reimbursement for his attorneys' fees in the criminal proceeding to which he was entitled under Texas law.

**A. Liberty Interest**

Following *Paul v. Davis,* 424 U.S. 693, 710-11, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976), we have consistently required plaintiffs alleging that the defamatory statements of a government official operated to deprive them of a protected liberty interest to satisfy what has sometimes been referred to as the "stigma plus infringement" test. *San Jacinto Savings & Loan v. Kacal,* 928 F.2d 697, 701-702 (5th Cir.1991);  *Blackburn v. City of Marshall,* 42 F.3d 925, 935 (5th Cir.1995).  In order for a statement to be sufficiently stigmatizing to satisfy the first prong of the test, the statement must be both false and assert some serious wrongdoing on the part of the plaintiff.  *See Kacal,* 928 F.2d at 701; *Blackburn,* 42 F.2d at 936.  We doubt whether the statement that Vander Zee and Pounds exercised "poor judgment" is sufficiently condemnatory to satisfy the stigma prong of the test.  While the recitals regarding the "allegedly unlawful money laundering activities" and "alleged criminal conduct" of Vander Zee carry the suggestion of wrongdoing, they are clearly stated as allegations not facts.  Such allegations had been made in the indictment.

8

Moreover, the Agreement clearly states that Vander Zee was acquitted of the criminal charges. Therefore, the necessary element of falsity was not present. In any event, it is plain that the law was not clearly established that statements such as those here complained of satisfied the stigma prong, and hence the individual defendants were entitled to qualified immunity. *See Noyola v. Texas Department of Human Resources,* 846 F.2d 1021, 1024-26 (5th Cir.1988).

Moreover, regardless of whether the stigma prong of the test was satisfied, Vander Zee's *Bivens* claims were properly dismissed because he failed to allege the deprivation of a protected interest. To the extent that Vander Zee's claim rests on, to use his own words, the loss of his "freedom of choice in the job market," we are in agreement with the district court that his claim is barred by the Supreme Court's decision in *Siegert.* Neither harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries. *Siegert,* 500 U.S. at 233-35, 111 S.Ct. at 1794; *State of Texas v. Thompson,* 70 F.3d 390, 392 (5th Cir.1995). In *Siegert,* a psychologist brought a *Bivens* action against his former supervisor at a government hospital based upon the supervisor's highly unfavorable remarks regarding Siegert's performance in a letter written in response to inquiries from a subsequent employer. Siegert alleged that the supervisor's letter had resulted in the loss of his position at another hospital and in his inability to find similar employment, thereby depriving him of a liberty interest protected

by the Fifth Amendment.  In concluding that Siegert failed to state a claim for the denial of a constitutional right, the Supreme Court observed, "[t]he statements contained in the letter would undoubtedly damage the reputation of one in his position, and impair his future employment prospects ... [b]ut so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action."  *Siegert,* 500 U.S. at 234, 111 S.Ct. at 1794.

We find Vander Zee's present claim to be indistinguishable. To the extent that Vander Zee's ability to obtain other employment as a bank officer has been impaired, this impairment is the result of harm to his reputation rather than a result of any direct restrictions placed upon him by the settlement drafted by the defendants.  The Addendum does not prevent Vander Zee from working at any financial institution, but only from being re-hired by Stone Oak.  In this respect, Vander Zee's claim is distinguishable from *de facto* licensing cases such as *Phillips v. Vandygriff,* 711 F.2d 1217, 1221-23 (5th Cir.1983), in which we recognized the impairment of a protected liberty interest when a custom operated to exclude an individual from holding any position within a given field. Therefore, we conclude that Vander Zee failed to allege facts sufficient to make out a deprivation of a protected liberty interest under either the "stigma-plus-infringement" or the *de facto* licensing analysis.

**B. Property Interest**

10

It has been stated that an individual's "right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty' and "property' concepts of the Fifth Amendment." *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959); *see also Fed. Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 239-40, 108 S.Ct. 1780, 1787, 100 L.Ed.2d 265 (1988) (bank president possessed property right to continue to serve as president with which FDIC could not arbitrarily interfere). Indeed, the district court noted in its order that had Vander Zee alleged that the defendants had coerced his termination from his position at Stone Oak he could have presented a claim which would withstand a qualified immunity defense.[6] However, Vander Zee's

---

[6]Both in his brief and at oral argument, Vander Zee's counsel maintained that the complaint had alleged that the defendants had coerced Vander Zee's termination. However, this assertion simply is not supported by the pleadings. Vander Zee's First Amended Complaint, the only "live" pleading in this case, alleges that Vander Zee's termination was coerced by two individuals with the office of the Comptroller of the Currency (OCC) who are not defendants in the present action. In addition, the complaint alleges that Vander Zee's termination was "mandated" by the Department of Justice. However, the complaint contains no allegations that the individual defendants before us today in any way coerced Vander Zee's termination.

We believe that the confusion stems from the highly irregular procedural step taken by Vander Zee's counsel of filing a Second Amended Complaint *after* the district court had dismissed these defendants and severed the claims against them. In addition, the district court specifically denied Vander Zee's request for leave to amend, but instead allowed Vander Zee to amend his pleadings in a related suit pending before the district court to include any meritorious claims that he believed he possessed. Although this so-called Second Amended Complaint included allegations that Frels had participated in coercing Vander Zee's termination, this pleading is a nullity in the present appeal and is of

11

complaint alleges that it was the defendants' participation in drafting the Agreement and Addendum that interfered with his property interest in his employment with Stone Oak. The defendants could not have interfered with any protected property interest that Vander Zee may have possessed in his former position with Stone Oak as he had already resigned from the bank as of the date of the settlement.

Unlike the cases cited above, Vander Zee's complaint does not allege that the defendants caused him to be terminated from an existing position. Instead, Vander Zee complains that the Addendum preventing his rehiring interfered with his property interest in an alleged oral agreement to rehire him at some unspecified time in the future. The district court treated this claim as simply another allegation of reputational harm to future employment opportunities under *Siegert,* and therefore concluded that Vander Zee failed to allege the invasion of a constitutionally protected interest. While we reach the same ultimate result, we cannot concur in this analysis.

Unlike the reputational due process claim in *Siegert,* Vander Zee alleges a direct restriction on his rehiring at some point in the future by Stone Oak. Therefore, Vander Zee's alleged impairment of his future employment with Stone Oak stems from more than harm to reputation. Nonetheless, while Vander Zee's allegations may present a state law claim for interference with contractual relations, they likely do not state a claim for the

no consequence to our resolution of it.

12

invasion of any constitutionally protected property interest as he fails to allege that the defendants caused his termination from an existing position.

In any event, we are persuaded that the district court correctly held that even if Vander Zee's allegations were sufficient to allege the invasion of a protected property interest, the interest was not so clearly established as to overcome the defense of qualified immunity. We were confronted with similar facts in *Connelly v. Office of the Comptroller of the Currency,* 876 F.2d 1209 (5th Cir.1989). In *Connelly,* the plaintiff brought suit against the Comptroller and other OCC officials in both their official and individual capacities alleging, *inter alia,* that they had acted to deprive him of protected liberty and property interests in violation of the Due Process Clause of the Fifth Amendment. Connelly had signed a contract to become the president of a proposed national bank in Houston, Texas. However, the OCC District Administrator had sent a letter to the bank organizers informing them that the bank's charter would not be approved as long as Connelly was designated as president as the OCC was of the opinion that Connelly did not possess the necessary qualifications. As a result, Connelly's executory contract with the bank was canceled. In response to Connelly's suit, the defendants raised the defense of qualified immunity. Although we stopped short of holding that Connelly had no protected property interest in his prospective employment with the bank, we did hold that Connelly's alleged property interest was "at best "arguable.' " Therefore, we

13

concluded that the facts did not present a violation of a clearly established constitutional right which would overcome a qualified immunity defense.

While *Connelly* involved the OCC as opposed to officials of the Department of Justice, our disposition of the case turned not on the authority of the OCC to regulate the employees of chartered banks, but on the nature of the interest allegedly infringed. Because Vander Zee also alleged that the defendants interfered with an (oral) agreement to employ him (at some time unspecified) in the future rather than causing him to be terminated from a position in which he was serving at the time, we are similarly compelled to conclude that Vander Zee has failed to allege the violation of a clearly established constitutional right.

Finally, Vander Zee's claim that the defendants acted to deprive him of attorneys' fees incurred in mounting his criminal defense to which he was entitled under state law fails to state a claim because there simply was no deprivation. The Agreement expressly provided that Stone Oak was not to provide attorneys' fees or other financial assistance to Pounds and Vander Zee "unless the bank becomes legally obligated to do so." Therefore, contrary to Vander Zee's contentions, the Agreement simply did not have the effect of depriving Vander Zee of any attorneys' fees to which he may have been entitled under state law.

## II. Claims Against United States

Vander Zee also complains that the district court failed to address his request for declaratory and injunctive relief against

14

the United States for violations of his constitutional rights brought about as the result of the Agreement and Addendum. We understand these claims to have been addressed by the district court's holding that actions pertaining to the settlement of litigation are within the "exclusive discretion" of the Department of Justice, and therefore fall within one of the exceptions to the APA's waiver of sovereign immunity for non-monetary claims against the United States found at 5 U.S.C. § 701(a)(2). Without deciding the question of whether the settlement authority of the Department of Justice is so far reaching, we also conclude that Vander Zee's claims for declaratory and injunctive relief were properly dismissed. However, we find this result to be dictated by different concerns.

Section 702 of the APA provides for judicial review of "agency action," and waives sovereign immunity for claims "seeking relief other than money damages." However, the federal courts are specifically excluded from the APA's definition of "agency" by § 701(b)(1)(B). In the case at bar, the Agreement specifically provided that it would not become effective and binding until approved by order of the district court.[7] Therefore, Vander Zee seeks declaratory and injunctive relief not from an agency action,

_____

[7] "The Parties further agree that this Agreement shall not be final and become binding until this Agreement has been fully accepted and approved by the United States Department of Justice in accordance with the Code of Federal Regulation governing the settlement authority regarding this Agreement and further accepted, approved, granted, and ordered by the United States District Court, Western District of Texas, San Antonio Division."

15

but instead seeks to collaterally attack the district court order approving the terms of the settlement.  Should Vander Zee wish to challenge the district court's order approving the term of the settlement, the proper avenue would be to seek to intervene before the district court which has retained jurisdiction in order to enforce the terms of its order.[8]

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[8]Should the district court in that proceeding deny intervention or, although granting intervention, deny Vander Zee relief, he could seek review of such order by direct appeal (or, perhaps, mandamus, should direct appeal be for some reason unavailable).