John M. WARREN, Plaintiff,

v.

CITY OF JUNCTION CITY, KS., Defendant.

No. 01–2110–JWL.

United States District Court, D. Kansas.

April 18, 2002.

As Amended Nunc Pro Tunc April 22, 2002.

Michael E. Francis, Alan V. Johnson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for Plaintiff.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendant.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Former Chief of Police John Warren filed suit against the City of Junction City ("the city") alleging that the steps taken by the city in terminating his employment were improper. He asserted two theories of recovery under 42 U.S.C. § 1983 claiming that he was deprived of both property and liberty interests without comporting with the constitutional requirements of procedural due process. He also asserted a state law breach of contract claim. The court dismissed the property interest and breach of contract claims on summary judgment. *Warren v. City of Junction City,* 176 F.Supp.2d 1118, 1130 (D.Kan. 2001). Following a trial in March of 2002, the jury returned a verdict in favor of the plaintiff on his liberty interest claim and awarded him $25,000 in lost wages and $75,000 in other compensatory damages.

The matter is now before the court on defendant's motion for judgment as a matter of law or in the alternative for a new trial (Doc. 57) pursuant to Federal Rules of Civil Procedure 50(b) and 59(a). In its motion, defendant also moves, pursuant to Rule 59(e), to clarify the Judgment to show that the applicable rate of interest is 2.28 percent per annum. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## I. Motion for Judgment as a Matter of Law

At the close of plaintiff's evidence and again at the close of all evidence at trial, defendant moved for judgment as a matter of law on all issues under Rule 50(a). After considering the parties' arguments and the legal support for them, the court denied defendant's motion. Defendant now renews its motion for judgment as a matter of law pursuant to Rule 50(b). Specifically, defendant argues that it did not deprive plaintiff of his liberty interest and, consequently, it is entitled to judgment as a matter of law because: (1) the statements adopted by the City of Junction City were protected opinions and not false statements of fact; and (2) plaintiff was required to and failed to prove that the city's employees acted with actual malice. Alternatively, defendant argues it is entitled to judgment as a matter of law with regard to the $25,000 in damages the jury awarded for lost wages because there was no evidence that defendant's denial of due process caused plaintiff to be unable to find employment.

### A. Standard

Judgment as a matter of law under Rule 50(b) "should be cautiously and sparingly granted," *Black v. M & W Gear Co.,* 269 F.3d 1220, 1238 (10th Cir.2001), and is appropriate only if the evidence, viewed in the light most favorable to the nonmoving party, "points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Sanjuan v. IBP, Inc.,* 275 F.3d 1290, 1293 (10th Cir.2002). In determining whether judgment as a matter of law is proper, the court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *See Turnbull v. Topeka State Hosp.,* 255 F.3d 1238, 1241 (10th Cir.2001).

In essence, the court must affirm the jury verdict if, viewing the record in the light most favorable to the nonmoving party, it contains evidence upon which the jury could properly return a verdict for the nonmoving party. *See Roberts v. Progressive Independence, Inc.,* 183 F.3d 1215, 1219–20 (10th Cir.1999) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,*

82 F.3d 1533, 1546 (10th Cir.1996)). Conversely, the court must enter judgment as a matter of law in favor of the moving party if "there is no legally sufficient evidentiary basis ... with respect to a claim or defense ... under the controlling law." *Deters v. Equifax Credit Information Servs., Inc.,* 202 F.3d 1262, 1268 (10th Cir. 2000) (quoting *Harolds,* 82 F.3d at 1546–47).

## B. Analysis

The court instructed the jury that in order for plaintiff to recover, he had to prove that: (1) defendant either made or adopted a statement impugning plaintiff's good name, reputation, honor or integrity; (2) the statement was false; (3) defendant made the statement in the course of termination proceedings or the statement foreclosed future employment opportunities; and (4) the statement was published. *See* Jury Instruction 10; *Garcia v. City Albuquerque,* 232 F.3d 760, 772 (10th Cir.2000). If all of the elements are established, "the Due Process Clause requires an adequate name-clearing hearing." *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 526 (10th Cir.1998).

## 1. Protected Opinion Statements

Defendant contends it was entitled to judgment as a matter of law and that the court erred in submitting plaintiff's liberty interest claim to the jury because the statements adopted by the city were opinions protected by the First Amendment and not verifiable statements of fact. Specifically, defendant argues that the statements contained in the Woner Report were couched in terms of "allegations," "Woner's opinions" or "what Woner felt" and not factual statements. The court does not dispute defendant's contention

that First Amendment principles mandate that a statement imply a provable fact or that the issue is a question of law.[1] Instead, the court disagrees with defendant's conclusion that the statements contained in the Woner Report, which were published in the *Junction City Daily Union* on October 24, 1999 and adopted by the city, did not contain statements that imply provable facts.

In support of its position, defendant points to *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). In *Milkovich,* a state law defamation action where the plaintiff alleged that an article written by the defendant contained a false accusation that the plaintiff had committed perjury, the Court held that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Id.* at 20, 110 S.Ct. 2695. Significantly, in reaching that conclusion, the Court rejected the argument that the First Amendment creates "a wholesale defamation exemption for anything that might be labeled 'opinion.'" *Id.* at 18, 110 S.Ct. 2695. It reasoned that an expression of opinion can often imply a knowledge of objective fact:

> If a speaker says, "In my opinion, John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if he states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much dam-

---

1. In *Schwartz v. American College of Emergency Physicians,* 215 F.3d 1140, 1146 (10th Cir. 2000), the Tenth Circuit held that the issue of whether a statement "is one of fact or opinion is a question of law."

age to reputation as the statement, "Jones is a liar."

*Id.* at 18–19, 110 S.Ct. 2695.

The Court then turned to the allegedly defamatory statement in the case before it, a newspaper article stating that anyone who was present at a wrestling meet "knows in his heart" that the wrestling coach lied in testifying about the meet at a later hearing. *Id.* at 5, 110 S.Ct. 2695. The Court "addressed two related questions: (1) whether a reasonable factfinder could conclude that the article implied an assertion that the plaintiff had committed perjury; and (2) whether the connotation that the plaintiff committed perjury was sufficiently factual to be susceptible of being proved true or false." *Jefferson County School Dist. No. R–1 v. Moody's Investor's Servs., Inc.,* 175 F.3d 848, 852–54 (10th Cir.1999) (citing *Milkovich,* 497 U.S. at 21, 110 S.Ct. 2695). The Court answered both questions in the affirmative. First, it determined that the article did not contain "the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that petitioner committed the crime of perjury." *Milkovich,* 497 U.S. at 21, 110 S.Ct. 2695. Second, it concluded that a determination of whether the wrestling coach committed perjury was possible by considering objective evidence, the transcripts of the wrestling coach's testimony. *Id.* Consequently, the Court concluded that the statement about the wrestling coach's testimony was not an expression of opinion. *Id.*

Applying the teachings of *Milkovich* to determine whether the statements in the Woner Report that were published in the October 24, 1999 issue of the *Junction City Daily Union* are fact or opinion, the court must first inquire whether a reasonable factfinder could conclude that the statements in the *Junction City Daily Union* implied an assertion that Mr. Warren

did obstruct justice, engage in selective law enforcement, mismanage the police department and ignore possible crimes. Next, the court must consider whether the published statements that Mr. Warren "mismanaged the police department", "ignored possible crimes," "engaged in selective law enforcement," "obstructed justice," and "unequally enforced policies" were "sufficiently factual to be susceptible of being proved true or false." *Milkovich,* 497 U.S. at 21, 110 S.Ct. 2695.

■ The court concludes as a matter of law that the statements contained in the *Junction City Daily Union* are statements of fact. A reasonable factfinder could conclude that the statements in the *Junction City Daily Union* implied an assertion that Mr. Warren did obstruct justice, engage in selective law enforcement, mismanage the police department and ignore possible crimes. The mere fact that these charges were couched in terms of allegations against Mr. Warren or Mr. Woner's opinions does not negate their stigmatizing effect or change the fact that when read in its entirety, the clear implication of the article is that Mr. Woner had objectively verifiable evidence that Mr. Warren engaged in dishonest activity. *See, e.g., Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir.1993) (holding that "[a] statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable"); *Morgan v. Tandy,* No. IP 99–535– C H/G, 2000 WL 682659, at *11–*12 (S.D.Ind. Feb.28, 2000) (providing a thorough and insightful summary of the "literal truth defense" in concluding that it is not a defense in a liberty interest claim

that the statement is prefaced as: "I believe," "reliable sources report," or "it is rumored"); Restatement (Second) of Torts § 566 (1977) ("A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."). Mr. Woner did not use "the sort of loose, figurative, or hyperbolic language which would negate the impression that [Mr. Woner] was seriously maintaining that [Mr. Warren] [obstructed justice, ignored possible crimes, etc.]" *Milkovich*, 497 U.S. at 21, 110 S.Ct. 2695.

The court also concludes that the published statements were sufficiently factual to be capable of being proven true or false. At trial Mr. Warren denied that he obstructed justice in a claim filed by a police officer against the city police department, denied that he engaged in selective law enforcement, denied that he unequally enforced police department policies and denied that he mismanaged the police department. He provided an explanation for his actions in each of these situations. The jury apparently believed this testimony and found that there was sufficient evidence to conclude that the statements contained in the *Junction City Daily Union* were false.

In further support of its position, defendant relies on *Vander Zee v. Reno*, 73 F.3d 1365 (5th Cir.1996), a Fifth Circuit case defendant argues stands for the proposition that published statements phrased as allegations are merely opinions. In *Vander Zee*, the plaintiff brought a *Bivens* cause of action against federal officials and the United States, claiming that recitals and conditions in a settlement agreement between the United States and a bank that employed the plaintiff deprived plaintiff of his protected liberty interest in violation of the Due Process Clause. *Id.* at 1366. The Fifth Circuit affirmed the district court's decision to dismiss the cause of action because it did not state a claim. *Id.* at 1369. Specifically, the Fifth Circuit found that the statement that the plaintiff exercised "poor judgment" was not stigmatizing. *Id.* The court added that "[w]hile the recitals regarding the 'allegedly unlawful money laundering activities' and 'alleged criminal conduct' of [the plaintiff] carry the suggestion of wrongdoing, they are clearly stated as allegations not facts" and "[s]uch allegations had been made in the indictment." *Id.* The court added: "Moreover, the Agreement clearly states that [the plaintiff] was acquitted of the criminal charges." *Id.* Based on these facts, the court concluded that "the element of falsity was not present." *Id.*

The court does not believe that *Vander Zee* furthers defendant's argument. First, *Vander Zee* is a Fifth Circuit case which, of course, is not binding on this court. More importantly, although the court does state that the suggested wrongdoing is stated as an allegation and not fact, this statement appears to be dicta. One reason the statement could not be false is because the publication made it clear that the plaintiff was acquitted of criminal charges. In contrast with *Vander Zee*, in the instant action the *Junction City Daily Union* article does not indicate that Mr. Warren was cleared of any alleged wrongdoing. This makes the present situation distinguishable. Finally, to the extent that the Fifth Circuit's statement is not dicta, there appears to be tension between the court's pronouncement and the Supreme Court's reasoning in *Milkovich*. In short, *Vander Zee* does not help defendant's position.

In sum, the court concludes that the statements contained in the *Junction City Daily Union* implied a knowledge of underlying fact and were not merely opin-

ions. When the city adopted those statements, as the jury found it did, and then created the impression the statements were true by acting on them and firing plaintiff, plaintiff was entitled to a name-clearing hearing. Plaintiff did not receive such a hearing from the city. Thus, because the jury found the statements to be false, defendant is liable for the damages caused by the lack of a name-clearing hearing.

## 2. Actual Malice

██ Defendant also contends that it is entitled to judgment as a matter of law because plaintiff was required to and failed to prove that defendant's employees acted with actual malice. Defendant argues that the actual malice standard set out in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), should apply to this case because the Tenth Circuit stated in *Melton v. City of Oklahoma City*, 928 F.2d 920 (10th Cir.1991): "Moreover, even though Lt. McBride reported the unfounded accusations of the FBI, there is no evidence that he did so maliciously, recklessly, or with any harmful intent." *Id.* at 928.[2] The court does not believe this statement was intended to apply the actual malice standard to a liberty interest claim because the Tenth Circuit's language was dicta made in the context of analyzing whether the statements made by a city official stigmatized the plaintiff. In short, the court never stated that the actual malice standard should apply. The court believes that plaintiff's liberty inter-

est claim involves interests distinct from a state law defamation claim and plaintiff's claim should not depend on defendant's state of mind.

*New York Times v. Sullivan* matched a public official plaintiff against the press's First Amendment defense in a defamation case. The *New York Times* holding and its progeny "rested primarily on the conviction that the common law of libel gave insufficient protection to the First Amendment guarantees of freedom of speech and freedom of press and that to avoid self-censorship it was essential that liability for damages be conditioned on the specific showing of culpable conduct by those who publish damaging falsehood." *Herbert v. Lando*, 441 U.S. 153, 159, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). In other words, the right of the public to be informed by a free press lies at the center of *New York Times* First Amendment concerns. To protect that right, *New York Times* and subsequent defamation cases have made "it essential to proving liability that the plaintiff focus on the conduct and state of mind of the defendant." *Id.*

Plaintiff asserts a constitutionally protected liberty interest claim aimed at protecting different interests. Defendant is sued not as a member of the press who published a false and defamatory statement about a public figure but as a government entity whose official fired an employee in a publicly stigmatizing manner without permitting him to be heard and defend himself. The United States Su-

---

**2.** Defendant also points the court to another statement in *Melton:* "As in *New York Times v. Sullivan* and *Bose* [*Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)], the finding of stigmatization intersects First Amendment principles and defamation law." 928 F.2d at 928. According to defendant, this statement highlights the First Amendment limitations on the liberty interest of a public official in an em-

ployment termination context. The court believes that the Tenth Circuit's statement in *Melton* was intended to explain why the court conducted an independent investigation of whether the statements made about the plaintiff were stigmatizing. The Tenth Circuit did not, however, intend to state literally that the *New York Times* actual malice standard would apply in that case.

preme Court has stated that in such a situation, a liberty interest claim does not hinge on the defendant's state of mind. *Siegert v. Gilley*, 500 U.S. 226, 234, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *see also McMath v. City of Gary, Indiana*, 976 F.2d 1026, 1032 (7th Cir.1992) ("As to the defendants' contention regarding actual malice, *Siegert*, while referencing the malice issue, did so in the context of a pure defamation claim, and indeed, rejected the view that infringement of a terminated employee's liberty interest turns on the defendant's state of mind.") *Id.* (citing *Siegert*, 500 U.S. at 234, 111 S.Ct. 1789 (internal quotations omitted)). Consistent with the Supreme Court's pronouncement in *Siegert*, no federal court that this court is aware of has held that the *New York Times* actual malice standard should apply to a liberty interest claim. *See, e.g., Baden v. Koch*, No. 79 CIV. 4296–CSH, 1984 WL 664, at *3 (S.D.N.Y. July 25, 1984) ("No Supreme Court or lower court case analyzing liberty interest claims holds or even suggests that *Sullivan* limits or affects the liability for compensatory damages of a public employer who thus violates the constitutional rights of an employee."). Thus, the court believes it acted correctly in declining to apply the *New York Times* actual malice standard to plaintiff's liberty interest claim.

### 3. Damage Award for Lost Wages

■ Because the court believes that plaintiff did put forth evidence sufficient to prove defendant deprived him of his liberty interest, the court now turns to defendant's alternative argument that it is entitled to judgment as a matter of law on the $25,000 in damages the jury awarded for lost wages. At trial, plaintiff sought damages for emotional distress and lost wages. Defendant moved for judgment as a matter of law on plaintiff's claim for lost wages at the close of plaintiff's case and again at the close of all of the evidence. Although the court did not grant the motions, it isolated the issue by separating lost wages and other compensatory damages as itemized damages on the verdict form. The jury returned a verdict for plaintiff and awarded him $25,000 in lost wages and $75,000 in other compensatory damages.

Defendant renews its argument that it is entitled to judgment as a matter of law because there was no evidence that defendant's stigmatizing statements caused plaintiff to be unable to find employment. The court agrees with defendant and finds as a matter of law that plaintiff's claim for lost wages cannot stand because there was not evidence before the jury upon which it could properly have found that defendant's stigmatizing statements caused plaintiff's loss of employment.

■ A plaintiff may be awarded compensatory damages, including lost wages and emotional distress, but to recover damages plaintiff must prove that the "injury was actually caused" by the denial of due process itself. *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *McGhee v. Draper*, 639 F.2d 639, 644 (10th Cir.1981) (holding that "the burden remains on the plaintiff to prove the link between the due process violation and any particular consequence that would support an award of damages"). Absent a link showing the lack of due process itself caused the injury, plaintiff is entitled to recover only nominal damages. *Carey*, 435 U.S. at 264, 98 S.Ct. 1042. In sum, a plaintiff seeking to recover damages for a liberty interest violation must overcome two hurdles. First, the plaintiff must prove that a due process violation occurred and second, in order to recover damages, the plaintiff must also prove that the due process violation caused the plaintiff's injury.

Plaintiff argues that it did present evidence sufficient to meet its burden of showing that defendant's due process violation caused plaintiff's damage in the form of lost wages. Plaintiff argues that under Tenth Circuit law he does not have to prove that defendant's due process violation caused him to be unable to find employment. Instead, according to plaintiff, he must show only that the publicized false charge is of sufficient stigma to make him an unlikely candidate for employment. In support of his argument, plaintiff cites to *Melton*. In *Melton*, the court stated in footnote 11:

> The employee does not have to prove *actual* denial of a job opportunity. It is sufficient that a plaintiff prove termination based upon a publicized false charge of sufficient opprobrium that would make the plaintiff an unlikely candidate for employment by a future employer. *See, e.g., Green v. St. Louis Housing Auth.*, 911 F.2d 65, 69 (8th Cir.1990) (Stigma sufficient if it involves dishonesty, serious felony, manifest racism, serious mental illness, or the like. Such "characteristics imply an inherent or at least a persistent personal condition, which both the general public and a potential future employer are likely to want to avoid.")

928 F.2d at 927 n. 11 (emphasis in original). As further support, plaintiff argues he is entitled to compensation if he proved either that the "defendant made the statement in the course of termination proceedings or the statement foreclosed future employment opportunities." *Garcia v. City of Albuquerque*, 232 F.3d 760, 772 (10th Cir.2000). The court agrees that in order for plaintiff to show a due process violation occurred, plaintiff must prove only that defendant made the statement in the course of the termination proceedings or the statement foreclosed future employment opportunities and the court further agrees that in terms of foreclosed future

employment opportunities it is sufficient for plaintiff to show that he is an unlikely candidate for employment. The court cannot agree, however, that the Tenth Circuit's language in *Melton* was intended to mean that a plaintiff can recover damages for lost wages if he or she is an unlikely candidate for future employment. The court in *Melton* was merely pointing out that in order for a plaintiff to establish that he or she was deprived of his or her liberty interest, a plaintiff need not show actual job loss. Such a showing is not sufficient, however, to recover damages for lost wages. A plaintiff wishing to recover such damages must overcome the second hurdle in the due process analysis and prove that the constitutional violation actually caused plaintiff to be unable to find employment. In other words, in order to clear this second hurdle, the court believes that plaintiff had to show that defendant's statements actually caused prospective employers to avoid hiring plaintiff.

At trial, plaintiff failed to present any evidence to establish that defendant's stigmatizing statements prevented him from obtaining employment. Defendant's City Manager, Rod Barnes, testified that plaintiff would have been terminated as the Chief of Police in Junction City even if a name-clearing hearing had been granted. Plaintiff testified that after he was fired by the City of Junction City, he was not employed for approximately six months. Approximately six months after he was terminated, plaintiff was hired as the head of security for Washburn University. In his new job as head of security, plaintiff testified that he is making as much or more money than he made as Chief of Police in Junction City. Thus, plaintiff's lost wages claim centers around whether defendant's constitutional deprivation caused plaintiff to be unemployed for the six month period before he was hired by Washburn University.

Plaintiff testified that in the period after he was terminated, he applied for over 60 jobs across the country but was denied employment each time he applied. Plaintiff failed, however, to present evidence establishing that the reason he was not hired by those prospective employers was because of the stigmatizing statements published about plaintiff in the newspaper. In fact, when asked by defense counsel, plaintiff was unable to identify a single prospective employer who told him that he was not considered, hired or given an opportunity to interview because the employer had read the stigmatizing statements about plaintiff in the newspaper. In short, plaintiff failed to put before the jury any evidence upon which the jury could properly find that defendant's constitutional deprivation caused plaintiff to be unable to find employment for the six month gap when he was unemployed and, thus, defendant is entitled to judgment as a matter of law on plaintiff's claim for lost wages.

## II. Motion for a New Trial

Defendant asks, alternatively, that the court grant a new trial because the jury verdict regarding lost wages was against the weight of the evidence and because the court submitted two erroneous jury instructions regarding that issue. Because the court entered judgment as a matter of law for defendant on plaintiff's claim for lost wages, the court does not address plaintiff's alternative argument.

## III. Motion to Clarify the Judgment

Pursuant to Rule 59(e), defendant moves to clarify the Judgment to show that the applicable rate of interest is 2.28 percent per annum. It appears that the per annum language was inadvertently omitted in the Judgment. In accordance with 28 U.S.C. § 1961, the rate of interest is set on an annual percentage rate and the Judgment is amended to state that the applicable rate of interest is 2.28 percent per annum.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for judgment as a matter of law or in the alternative for a new trial (Doc. 57) is granted in part and denied in part. Specifically, the court grants defendant's motion for judgment as a matter of law on plaintiff's claim for lost wages and grants defendant's motion to clarify the Judgment. The jury's $25,000 award for lost wages is set aside and the applicable rate of interest is set at 2.28 percent per annum. The court denies defendant's motion for judgment as a matter of law on its arguments that it did not deprive plaintiff of his liberty interest because defendant's statements were protected opinion and because plaintiff failed to show that defendant acted with actual malice. In light of its previous holdings, the court does not reach defendant's motion for a new trial regarding the jury's $25,000 damage award for lost wages.