[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 14, 2006
THOMAS K. KAHN
CLERK

No. 06-10797

D. C. Docket No. 05-00173 CV-LSC-S

BILL L. HARBERT,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Alabama

**(November 14, 2006)**

Before ANDERSON and DUBINA, Circuit Judges, and VINSON,* District Judge.

PER CURIAM:

_____
*Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

Appellant, Bill L. Harbert ("Harbert"), appeals the district court order dismissing his declaratory judgment action against Appellee, the United States of America ("the Government"), for lack of subject matter jurisdiction. For the reasons that follow, we affirm.

## I. BACKGROUND

### A. Facts

The facts are, for the most part, taken verbatim from the memorandum opinion of the district court. Harbert is the former chairman of Bill Harbert International Construction, Inc. ("BHIC"), a Delaware corporation with its principal place of business in Birmingham, Alabama. Harbert is also the former managing director of Bilhar International Establishment ("Bilhar"), formerly known as Harbert International Establishment. Both companies were involved in the international construction business. On December 6, 2001, the United States Agency for International Development ("USAID") suspended BHIC, Bilhar, and Harbert from procurement and nonprocurement activities on USAID projects, pending the completion of the investigation of Bilhar and BHIC for alleged "bid-rigging" on USAID projects in Egypt from 1988 through 1996.

On July 25, 2001, a federal grand jury indicted BHIC, Bilhar, and Bilhar's former president, Elmore Roy Anderson, for violation of the Sherman Act, 15

2

U.S.C. § 1, and conspiracy to defraud the United States, 18 U.S.C. § 371. A plea bargain was reached whereby Bilhar pleaded guilty to a violation of the Sherman Act and BHIC was dismissed as a defendant. Bilhar agreed to pay a $54 million fine and fully cooperate with the government's investigation into bid-rigging. Bilhar was to pay $10 million upon sentencing and the remaining $44 million in monthly installments of $733,333.33. In return, with the exception of Bilhar's president, Elmore Roy Anderson, the government agreed not to criminally prosecute any other officers, directors or employees of Bilhar. In consideration for the plea agreement, Harbert agreed to personally guarantee the $54 million fine levied against Bilhar. Harbert signed a personal guarantee letter.

Following the district court's acceptance of the plea agreement, Bilhar paid $10 million to the government and two subsequent payments of $733,333.33 on March 26, 2002.

On November 18, 2003, the instant action was filed in the United States District Court for the District of Columbia seeking declaratory relief on behalf of Harbert before he was forced to begin paying Bilhar's fine under the personal guarantee letter he signed. Upon motion of the defendant in that case, the action was transferred to the Northern District of Alabama.

Bilhar made payments of $733,333.33 on the first of each month from April 2002 to August 2004. As of September 2004, Bilhar was no longer able to make its monthly payments. In total, Bilhar paid $31,999,999.90 of its $54 million fine. In October 2004, Harbert made a $1,466,666.66 payment into the registry of the United States District Court for the Northern District of Alabama, representing the two past due payments that Bilhar owed on its fine. On November 1, 2004, Harbert took over Bilhar's monthly payments and by agreement of the parties, those payments are held by the registry of the Northern District of Alabama pending resolution of this case. Thus far, Harbert has paid $7,333,333.30 into that account.

Harbert sought a declaration from the district court that the guarantee letter he signed is invalid and he sought the return of the funds he paid into the registry of the court.

The government filed a motion to dismiss challenging the district court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The district court granted the government's motion and Harbert then perfected this appeal.

## II.  ISSUES

(1) Whether the district court had subject matter jurisdiction over Harbert's claim pursuant to the Due Process Clause of the Fourteenth Amendment.

(2) Whether the Administrative Procedure Act ("APA") confers subject matter jurisdiction on the district court.

(3) Whether the district court should have realigned the parties, thereby destroying the government's sovereign immunity.

(4) Whether the district court's dismissal for lack of subject matter jurisdiction denied Harbert access to the courts.

(5) Whether it is appropriate to remand this case for the development of a full fact record.

## III.  STANDARD OF REVIEW

"We review issues of federal subject matter jurisdiction *de novo*."  *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1333 (11th Cir. 1999).

## IV.  DISCUSSION

### A.    Due Process

Harbert argues that 28 U.S.C. § 1331 confers federal subject matter jurisdiction on the district court because Harbert's amended complaint alleged violations of his constitutional rights.  Specifically, Harbert alleges that (1) he was

deprived of the constitutional protections ensured by Federal Rule of Criminal Procedure 11; (2) he was deprived of his Sixth Amendment right to be informed of the nature and cause of the accusation against him before the criminal fine was imposed because there was no formal indictment; (3) he was deprived of his Eighth Amendment right to be free from excessive fines; and (4) he was deprived of his constitutional rights because no fact was found by a jury or stipulated within any plea agreement regarding Harbert's guilt or the appropriateness of the application of the fine to him.

It is well established that, "'[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1263 (11th Cir. 2000) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994)). "The terms of the federal government's 'consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *JBP Acquisitions*, 224 F.3d at 1263 (citation omitted).

After reviewing the record, reading the parties' briefs and having the benefit of oral argument, we conclude that the district court correctly held that it lacked jurisdiction pursuant to 28 U.S.C. § 1331 because § 1331 cannot be construed to

constitute a waiver of sovereign immunity. *Beale v. Blount*, 461 F.2d 1133, 1138 (5th Cir. 1972).[1]

Further, the Supreme Court has recognized that a suit may be dismissed for lack of jurisdiction if the claim clearly appears to be immaterial or frivolous and is made solely for the purpose of obtaining jurisdiction. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89, 118 S. Ct. 1003, 1010, 140 L. Ed. 2d 210 (1998). Based on our review of the record, we conclude that Harbert has alleged no colorable constitutional claims. Federal Rule of Criminal Procedure 11, by its terms, applies to a "defendant," who after being charged with a crime, enters a plea in court. The purpose of Rule 11 is to ensure that a defendant's guilty plea is "voluntary and knowing." *See United States v. Lopez*, 907 F.2d 1096, 1098-99 (11th Cir. 1990). The Government never charged Harbert with a crime in relation to his business dealings with BHIC or Bilhar. Thus, Rule 11 simply does not apply to Harbert's claims.

Moreover, given that criminal proceedings were never instituted against Harbert, we conclude that he suffered no Sixth Amendment violation because the Government did not indict him and no "sentencing violation" pursuant to

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), or *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), occurred.

Additionally, Harbert's Eighth Amendment claim fails because the Eighth Amendment applies only to punishment invoked as a sanction for criminal conduct. *Ingraham v. Wright*, 525 F.2d 909, 912-13 (5th Cir. 1976). As the Government correctly argues, Harbert, who was never charged in any criminal proceeding relating to the charges against Bilhar, was simply not entitled to the same procedures afforded a criminal defendant.

Next, Harbert argues that the federal courts have power, pursuant to the Constitution, to entertain constitutional claims against federal government agents without an authorizing statute from Congress. Citing *Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971) and *Eisentrager v. Forrestal*, 174 F.2d 961, 964 (D.C. Cir. 1949), *rev'd* 339 U.S. 763 (1950), Harbert contends in certain egregious contexts, when a United States citizen has been deprived of fundamental constitutional rights by the executive branch of government, jurisdiction flows from the Constitution. However, the law is clear–"the Constitution does not waive the Government's sovereign immunity in a suit for damages." *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982).

Waiver, if it exists at all, must be explicitly authorized by the statute giving rise to the cause of action. *Id.* Neither *Bivens* nor *Eisentrager* expanded the scope of jurisdiction in cases where the federal government is the defendant.

Further, the fact that Harbert alleges he is seeking only a declaratory judgment and no money damages is inconsequential. As the district court correctly held, the Declaratory Judgment Act does not establish an independent basis for federal jurisdiction. *Seibert v. Baptist*, 594 F.2d 423, 428 (5th Cir. 1979). Thus, none of the arguments that Harbert has advanced support his position that the mere assertion of constitutional claims invokes the district court's subject matter jurisdiction. The record demonstrates that Harbert simply voluntarily undertook the obligation to guarantee Bilhar's criminal fine and now he challenges the very action that he voluntarily undertook.

**B.   APA**

Harbert also argues that the district court properly had subject matter jurisdiction because the APA, 5 U.S.C. § 702, which he argues is applicable to his claims, waives the federal government's sovereign immunity. We first note that this argument was not made before the district court. Harbert concedes that, however, he argues because federal courts have an independent obligation to determine whether subject matter jurisdiction exists, we should nonetheless

consider his argument. Even if we consider Harbert's argument on the merits, he loses.

The APA permits judicial review of "final agency action." 5 U.S.C. § 704. Agency action is considered "final" when: (1) the action marks "the 'consummation' of the agency's decisionmaking process;" or (2) the action is one by which "'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78, 117 S. Ct. 1154, 1168, 187 L. Ed. 2d 281 (1997) (citations omitted). Harbert argues that by instituting a policy regarding the use of informal guarantee letters, obtaining the guarantee from him and attempting to enforce the guarantee, the Department of Justice has taken "final action" which gives rise to severe legal consequences. We agree with the Government, however, that Harbert has failed to prove that the acts complained of constituted "final agency action" because the action that Harbert challenges is not the Government's plea offer (inclusive of the guarantee), but Harbert's decision to sign the guarantee agreement in conjunction with Bilhar's plea agreement. Harbert was not himself subject to any criminal action. The Government did not and certainly could not have required Harbert to sign the guarantee without his consent. Thus, although there are legal obligations that flow from Harbert's signing the guarantee, those obligations are the result of Harbert's

10

*voluntary* actions, not the result of any binding agency action and, therefore, are not the kind of legal obligations with which the finality doctrine is concerned.

Finally, we find the case of *Vander Zee v. Reno*, 73 F.3d 1365 (5th Cir. 1996), persuasive. In *Reno*, the district court dismissed the Plaintiff's APA claims because it held that the agreement was a settlement decision, within the exclusive discretion of the Department of Justice. *Id.* at 1368. On appeal, the Fifth Circuit refused to decide whether the settlement authority of the Department of Justice was as far reaching as the district court held, but dismissed the Plaintiff's claims on other grounds. *Id.* at 1371-72. Given that the settlement agreement was not effective until after it had been approved by the district court, the Fifth Circuit held that the plaintiff had not sought relief from "agency action," but instead sought to collaterally attack the district court's approval of the settlement. *Id.* at 1372. Like *Reno,* the plea agreement here did not become effective and binding until approved by order of the court. Thus, we conclude that Harbert seeks declaratory relief, not from agency action, but seeks to collaterally attack the district court order approving the terms of the plea agreement. Thus, the "final" agency action was the approval of the plea agreement and for purposes of the APA, a district court order cannot constitute final agency action.

## C.   Realignment of Parties

We can summarily dispose of Harbert's contention that the parties should be realigned. Because the Government and Harbert do not have the same ultimate interest, we conclude that they are properly aligned.

## D.   Access to the Courts

Harbert argues that because he was not a party to the Bilhar Plea Agreement or to the criminal action and was unable to seek judicial review of the guarantee agreement through direct appeal, *habeas corpus*, or *coram nobis*, he was denied access to the courts. Harbert fails to cite any authority for his position. The Government argues that Harbert has failed to allege a colorable access claim because his claim does not fall within the category of claims recognized by the Supreme Court.

Access to court claims generally fall into two categories: (1) claims that "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," *Christopher v. Harbury*, 536 U.S. 403, 413 (2002), and (2) claims that a specific case cannot now be tried because official action "caused the loss or inadequate settlement of a meritorious case," the loss of an opportunity to file suit or "the loss of an opportunity to seek some particular order of relief." *Id.* at 413-14. In effect, the "official action" that Harbert

12

complains of is the Government's failure to indict him and make him a party to the criminal action so that Harbert could appeal the validity of the plea agreement. Harbert cannot base his access claim on official action that was clearly within the discretion of the Government. Moreover, given that Harbert was not a party to the criminal action, he does not have a cognizable underlying claim in the form of an appeal, habeas, or coram nobis petition that is being frustrated. In sum, we conclude that Harbert's claims simply do not fit into a category of cognizable access claims.

### E.     Remand for Development of Fact Record

Because of our foregoing discussion, there is no basis to remand this case to the district court because jurisdiction does not turn on any factual dispute. The district court dismissed Harbert's claims based purely upon a question of law – the Government's sovereign immunity.

For the above-stated reasons, we conclude that the Government has not waived its sovereign immunity. Accordingly, we affirm the district court's judgment of dismissal.

**AFFIRMED.**

13