# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 6, 2009

Charles R. Fulbruge III
Clerk

No. 07-30964

SHANNON BREAUX, Etc

Plaintiff

v.

HALLIBURTON ENERGY SERVICES

Defendant - Appellee-Cross-Appellant

v.

ERA AVIATION INC; ROWAN COMPANIES INC

Defendants - Appellants-Cross-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This appeal involves the application of two separate contracts. Under one contract, the district court found that Era Aviation, Inc. ("Era") was required to indemnify Halliburton Energy Services ("HES") for liability arising out of Era's provision of aviation services. Under the second contract, the district court found that HES was required to indemnify Rowan Companies, Inc. ("Rowan") and its subsidiary Era, for liability relating to the death of HES's employees

while they were on Era's equipment. Applying both indemnity provisions, the district court held that the reciprocal obligations created a circular indemnity resulting in no party being entitled to indemnity from the other, and likewise, no party was entitled to additional insured status. The parties filed cross-appeals. The issues raised on both appeals center on the applicability of the indemnity and insurance provisions under the contracts. Both parties raise as issues whether the district court's rulings were proper, and the cross-appeal separately presents alternative bases to support the judgment. For the following reasons, we affirm in part and remand in part for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Factual Background

This case arises out of a helicopter crash in March 2004 that resulted in the death of ten occupants, including some of HES's employees. HES is in the business of providing goods and services to customers with onshore and offshore operations in support of oil and gas exploration and production. Rowan likewise provides goods and services to customers in the oil and gas business who utilize Rowan's equipment and property. Era, a subsidiary of Rowan at the time of the helicopter accident, was a provider of specialized helicopter services. A helicopter operated by Era departed Galveston, Texas with two crew members and eight passengers. Four of the eight passengers aboard the helicopter, Tyler Breaux, Thomas Wayne Jackson, Jr., Andre Lake, and Jeffrey Willis Langley, were employed by HES. The purpose of the flight was to transport the oil field workers to an offshore drilling vessel, the Discover Spirit, operated by Transocean Offshore Deepwater Drilling, Inc. ("Transocean"). Union Oil Company of California ("Unocal"), the operator of wells in the Gulf of Mexico, had previously contracted with Transocean for the services of the Discover Spirit in connection with the operation of Unocal's offshore wells. Era and HES were

providing services to the same customer, Unocal. The aircraft crashed during the flight, and all ten occupants were killed as a result of the accident.

## II.   The Procedural Background

In May 2004, Plaintiff Shannon Breaux, individually, and as administratrix of the succession of Tyler Breaux, filed suit against Era and Rowan, among others, for damages arising out of the death of her husband, HES's employee Tyler Breaux ("Breaux Action"). In June 2004, the Breaux Action was removed to federal court and consolidated with two other actions arising out of the same accident.

Era and Rowan filed a Third Party Complaint against HES seeking contractual defense, indemnity, and additional insured status relating to the claims of the four HES employees killed in the accident under a Mutual Hold Harmless and Indemnity Agreement between Rowan and HES ("Rowan/HES Agreement"). HES filed a Counterclaim against Era and Rowan seeking defense, indemnity, and additional insured status relating to all claims made against HES under a Commercial Agreement for Helicopter Transportation Services ("Era/Unocal Agreement"). The Era/Unocal Agreement and Rowan/HES Agreement are central to this appeal.

### A.    Era/Unocal Agreement

The Era/Unocal Agreement was executed by Era and Unocal on July 3, 2003. The Era/Unocal Agreement incorporated the indemnity provisions contained in the Services and Drilling Master Contract ("SDM") the two parties executed on June 9, 1992. While Rowan was not a signatory to the Era/Unocal Agreement, it was a wholly-owned subsidiary of Era. "Contractor" is defined as "Era Aviation, Inc. and any and all of its parent companies, subsidiaries and affiliates." The agreement also expressly applies to helicopter services and the transport of personnel and equipment.

The Era/Unocal Agreement provides in pertinent part as follows:

**6.1**[1]  **CONTRACTOR'S Indemnity.** CONTRACTOR [Era] hereby agrees . . . to release, defend, and indemnify COMPANY [Unocal] . . . and its contractors and subcontractor(s) of any tier to the maximum extent permitted by the applicable law, in each and every case, irrespective of whether any indemnitee hereunder may be alleged or proven to have been negligent (including but not limited to active, passive, sole, joint, concurrent, comparative, contractual and gross negligence), or otherwise legally liable (with or without fault or whether strictly liable or in breach of any warranty), . . . from and against any and all liability arising out of the following:

. . .

c.  All claims, liabilities, demands, actions, damages, losses, and expenses, including but not limited to court costs, reasonable attorney's fees, and other litigation expenses, for personal or bodily injury, illness, disease, or death resulting from [Era's] ownership, operation, maintenance or use of aircraft under the Contract, regardless of when, or where such injury, illness, disease or death occurs . . . .

*B.     Rowan / HES Agreement*

The Rowan/HES Agreement was executed by Rowan and HES on August 26, 2003.   Era was not a signatory to the Rowan/HES Agreement, but the provisions of the agreement inure to the benefit of Rowan's "subsidiary and affiliated companies."   The four introductory paragraphs of the agreement establish the intent of the agreement.

WHEREAS, Contractor [HES] is engaged in the business of supplying goods or services to customers having onshore and offshore operations relating to the exploration and production of oil and gas;

---

[1]   The document in the record at R. 968 contains a handwritten underline emphasis. We have omitted that emphasis here.

WHEREAS, Company [Rowan] is engaged in the business of supplying goods or services to such customers utilizing equipment and property owned by or under the management of Company [Rowan] or its subsidiary or affiliated companies (the "Company's Property");

WHEREAS, Contractor's [HES] personnel or property are from time to time located near or placed on Company's Property under circumstances in which Company [Rowan] has not hired Contractor [HES] but Contractor [HES] and Company [Rowan] are providing goods or services to the same customer in connection with a project; and

WHEREAS, Contractor [HES] and Company [Rowan] hereby wish to apportion their respective liabilities and responsibilities under such circumstances.

The agreement then defines the scope of the indemnity obligation as follows:[2]

(a) The parties [Rowan and HES] expressly intend and agree that the phrase "be responsible for and hold harmess and indemnify," as used in this agreement, shall mean that the indemnifying party shall release, indemnify, hold harmless and defend the indemnified party from and against any and all claims, demands, fines, penalties, causes of action, damages, attorney's fees, cost of litigation, court costs, judgments and awards of any kind or character (collectively referred to hereinafter as the "claims"), without limit and without regard to the cause or causes thereof, including pre-existing conditions, defect or ruin of premises . . ., the unseaworthiness of any vessel or vessels . . ., the ownership, possession, management, maintenance, supply, operation (including but not limited to ingress, egress, loading and unloading operations) or navigation of any vessel, breach of representation or warranty . . ., breach of duty (whether statutory, contractual or otherwise), stict liability, tort, breach of contract (including any claims which arise by reason of indemnification or assumption of liability contained in other contracts entered into between an indemnified party and a third party), fault, regulatory or statutory liability, the negligence of any person or persons, including that of an

---

[2] We have omitted the all-caps font in the following text for purposes of this opinion.

indemnified party, whether such negligence be sole, joint or concurrent, active, passive or gross, or any other theory of legal liability.

The agreement then details each party's respective indemnity obligation. Regarding HES's obligation, the agreement provides as follows:[3]

> Contractor [HES] shall at all times be responsible for and hold harmless and indemnify company [Rowan] from and against all claims arising in connection herewith in favor of contractor, its parents, subsidiary and affiliated companies, each of their respective officers, directors and employees, each of their respective officers, directors and employees, and any legal representative, heir or survivor of any of the forgoing (. . . collectively referred to as the "Contractor's Group") on account of illness, injury, or death of contractor's group or damage to or loss of property owned, rented or provided by Contractor's Group. . . .

The agreement also required Rowan and HES to maintain four types of insurance: comprehensive general liability (including contractual coverage), comprehensive automobile liability, workers' compensation and employer's liability, and excess insurance. Regarding the interplay between the indemnity provisions and the insurance provisions, the agreement provides that

> [n]otwithstanding any other provisions of this Agreement to the contrary, the parties hereby acknowledge and agree that the indemnity obligations and the insurance obligations set forth herein are separate and distinct duties under this Agreement. The parties further acknowledge and agree that the indemnity provisions of this Agreement shall not limit, restrict or alter the obligations of this Agreement, even if one or more of the indemnity provisions are held by a court to be unenforceable.

---

[3] This paragraph was also in all-caps font, which we have omitted.

C.    *Summary Judgment Rulings*

In July 2005, Era and Rowan filed a motion for partial summary judgment against HES with respect to the claims asserted in the Breaux action.[4]  Era and Rowan argued that they were entitled to defense, indemnity, and additional insured status from HES under the Rowan/HES Agreement.  In August 2005, HES filed a motion for summary judgment seeking a declaration that it was not required to defend and indemnify Era and Rowan or name them as additional insureds on its insurance policies.  HES also sought a declaration that it was entitled to a defense, indemnity, and additional insured status from Era with respect to the claims asserted by Era and Rowan in their third-party claim against HES pursuant to the Era/Unocal Agreement.

In December 2005, the district court issued an Order and Reasons on the motions.  Regarding the Rowan/HES Agreement, the district court held:

> [T]he Rowan/[HES] Agreement applies under these facts and requires [HES] to indemnify Era for the Breaux claims . . . .  Moreover, the agreement expressly entitles Era additional insured status on whichever policies [HES] obtained to insure its indemnity obligations under the Rowan/[HES] Agreement.  Unfortunately, the Era/Unocal Agreement functions to preclude Era from obtaining the benefits of the Rowan/[HES] Agreement.

As to Era's entitlement to additional insured status under the Rowan/HES Agreement, the district court nonetheless held that "[i]t would be unfair" to permit Era to receive indemnification under the additional insured status.

The district court further held that the Era/Unocal Agreement applied to the facts of this case.  As to Era's argument that the Era/Unocal Agreement was superseded by the later executed Rowan/HES Agreement, the court stated that "Era executed indemnity agreements with two distinct parties—[HES] and

---

[4]   The Third Party Complaint against HES included claims relating to all four HES employees, but the motion for partial summary judgment addressed only the Breaux Action claims.

Unocal. Era cannot escape the promises it made in its agreement with Unocal by invoking provisions contained in a separate agreement that it later executed with a third party." The district court held that the Era/Unocal Agreement did not entitle HES to additional insured status because the terms of the agreement did not indicate that HES was part of the Unocal group which was entitled to additional insured status under the agreement.

The district court issued a final judgment on September 26, 2007, disposing of all the remaining claims of all parties in the case. Era, Rowan, and HES timely filed their notices of appeal.

## DISCUSSION

I.     Standard of Review

This court reviews a district court's grant of summary judgment *de novo*. *LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 386 (5th Cir. 2007). Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All the facts and evidence must be taken in the light most favorable to the non-movant. *LeMaire,* 480 F.3d at 387.

The Era/Unocal and Rowan/HES Agreements provide that maritime/admiralty law shall govern, and to the extent such law is not applicable, Texas law shall govern. "A maritime contract containing an indemnity agreement . . . should be read as a whole and its words given their plain meaning unless the provision is ambiguous." *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984) (citation omitted). "Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties." *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 286 (5th Cir. 1997) (citation omitted). Where "the written

instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law." *Id.* "A court should construe an indemnity clause to cover all losses which reasonably appear to have been within the parties' contemplation." *Foreman v. Exxon Corp.*, 770 F.2d 490, 496 (5th Cir. 1985) (internal quotations and citation omitted).

## II.    Indemnity Under Era/Unocal Agreement

The Era/Unocal Agreement provides that Era agrees to release, defend, and indemnify Unocal and its contractors and subcontractors from and against any and *all liability arising out of* all claims, liabilities, demands, actions, damages, losses, and expenses for personal or bodily injury, illness, disease, or death resulting from Era's ownership, operation, maintenance or use of aircraft under the agreement.  Era and Rowan concede that the term "contractors" as relates to Unocal's "contractors and subcontractor(s)" in the Era/Unocal Agreement would include HES.

Era and Rowan argue that because Era and Rowan's claims against HES are contractual in nature and are not claims "for personal or bodily injury, illness, disease, or death," Era is not obligated to indemnify HES under the Era/Unocal Agreeement.  The agreement does not limit indemnity to only tort claims for personal or bodily injury, illness, disease, or death, but the agreement unambiguously encompasses indemnity for Unocal and "its contractors," in this case HES, against "all liability" arising out of those claims.  The claims arose out of liability for death resulting from Era's operation and/or use of the aircraft. Nothing in the Era/Unocal Agreement indicates an intent on the parties to exclude contractual liability.  From the plain language of the agreement, Era's and Rowan's claims in the Third Party Complaint against HES are covered by the Era/Unocal Agreement.

Era and Rowan rely on the Fifth Circuit's decision in *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329 (5th Cir. 1981), to argue that more specific language must be included to indicate an intention to include contractual liability. In *Corbitt*, Shell entered into a contract with Diamond M. The contract contained an indemnity provision whereby Shell agreed to indemnify Diamond M against all claims brought by Shell's employees, agents, invitees, or subcontractors for personal injuries arising out of work performed by them. *Corbitt*, 654 F.2d at 331. Diamond M assumed reciprocal liability to indemnify Shell for claims brought by its own employees, agents, and invitees. *Id.*

Shell also hired Sladco as an independent contractor to provide personnel, equipment, and supplies for casing services. Shell and Sladco executed a purchase order which contained a provision that Sladco "shall indemnify and defend Shell Oil Company and its employees and agents against all claims, suits, liabilities and expenses on account of injury or death . . . arising out of or in connection with this Order." *Id.* The litigation in *Corbitt* arose from the injury of a Sladco employee, Corbitt, who was working on Diamond M's drilling rig. Corbitt sued Diamond M, Diamond M filed a third-party action against Shell seeking indemnity, and Shell brought a third-party action against Sladco seeking indemnity. The relevant issue on appeal was whether Sladco was required to indemnify Shell for Shell's contractual liability to Diamond M. The court held that Sladco was not. The court in *Corbitt* stated as follows:

> Since the Purchase Order does not specifically provide that Sladco assumes claims arising from Shell's own separate contractual obligations, such indemnification is not required.
>
> Nor can it be said that Shell's contractual duty to indemnify Diamond M. is the kind of liability which the parties to the Purchase Order intended to include within the scope of Sladco's duty to indemnify. Apart from any contractual undertaking to the contrary, Sladco's exposure to liability for injuries sustained by its own employees would be limited by the relevant workers'

compensation scheme. . . . In the absence of such explicit language, it is unreasonable to assume that Sladco intended to undertake such an unusual and surprising obligation.

. . . .

The contract need not contain any special words to evince an intention to create a right of indemnity for independent contractual liabilities. We hold only that it must clearly express such a purpose. In this case, there is nothing in the contractual language itself or in the realities of the situation in which the parties executed the Purchase Order which reflects any such intention.

*Id.* at 333-34.

Era and Rowan liken the language of the indemnity provision in the Era/Unocal Agreement to the language of the provision at issue in *Corbitt*. There exists, however, a significant distinction between the facts of this case and those in *Corbitt*. In *Corbitt*, Sladco was being called upon to indemnify an undisclosed third party, while in this case, HES is undisputedly an indemnitee in the ERA/Unocal Agreement. Therefore, Era and Rowan had express notice of its indemnity obligation to HES for "all liability" arising out of those claims. Further, the Era/Unocal Agreement refers to "each and every case, irrespective" of whether the indemnitee was "negligent . . . or otherwise legally liable." Era and Rowan's argument that the language does not clearly require Era to indemnify HES with respect to its contractual indemnity obligations is not supported by either the unambiguous language of the Era/Unocal Agreement or caselaw. We therefore affirm the judgment on this issue.

III.    Rowan/HES Agreement Does Not Supersede Era/Unocal Agreement

Era and Rowan argue that the Rowan/HES Agreement should supersede the Era/Unocal Agreement because the Rowan/HES Agreement was executed later in time and contains provisions that deal with the same subject matter as provisions contained in the Era/Unocal Agreement. HES contends that the

Rowan/HES Agreement does not supersede the Era/Unocal Agreement because the parties to and the subject matter of the two contracts are different.

Era and Rowan cite one unpublished case to support their argument that a third party beneficiary waives any rights it has as a third party beneficiary by executing a subsequent contract. *See McLaughlin, Inc. v. City of Sandusky*, No. E-93-83, 1994 WL 700156 (Ohio Ct. App. Dec. 16, 1994) (unpublished). *McLaughlin* applied Ohio law. The other cases cited by Era and Rowan support the well-established contract principle that "[a] contract containing a term inconsistent with a term of an earlier contract *between the same parties* is interpreted as including an agreement to rescind the inconsistent term in the earlier contract." 29 WILLISTON ON CONTRACTS § 73:17 (4th ed. 2003) (emphasis added).

In this case, Era and Unocal are the parties to the Era/Unocal Agreement and Rowan and HES are parties to the Rowan/HES Agreement. HES was not a party to the Era/Unocal Agreement, and therefore, there is no sound basis to conclude that the Rowan/HES agreement supersedes the Era/Unocal Agreement. We also affirm the district court's judgment on this issue.

IV.    Indemnity Under Rowan/HES Agreement

HES contends that the types of liability actually addressed in the Rowan/HES Agreement make clear that liability for specialized aviation services was never intended as a subject of the Rowan/HES Agreement. Further, HES contends that the term "Company" in the Rowan/HES Agreement applies only to Rowan, and to include subsidiary and affiliated companies in the definition of "Company" would lead to superfluous text in the agreement. HES adds that because the Rowan/HES Agreement would apply only if HES and Rowan—not Era—were both working for the same customer on the same job-site, the Rowan/HES Agreement is inapplicable to the facts of this case.

The Rowan/HES Agreement provides that Rowan, "for and on behalf of itself and its subsidiary and affiliated companies," is referred to as "Company" in the agreement. Paragraph 2(b) expressly states that "an indemnifying party's obligations contained in this agreement shall extend to the indemnified party, its parent, subsidiary, and affiliated companies." Therefore, Era, as a subsidiary of Rowan, is also entitled to any protections of the agreement.

The introductory paragraphs indicate that the parties knew that each party was in the business of supplying goods or services, and as to Rowan and Era, it provides that "Company is engaged in the business of supplying goods and services to such customers utilizing equipment and property owned by or under the management of Company or its subsidiary or affiliated companies." The parties, therefore, clearly anticipated that a broad range of goods and services provided by Rowan and Era would be within the scope of the agreement. We affirm the judgment on this issue.

V.    Additional Insured Status[5]

Era and Rowan argue that even if the court finds the indemnity provision in the Rowan/HES Agreement to be unenforceable, Era and Rowan are nonetheless entitled to additional insured status with respect to the claims of the HES employees because the Rowan/HES Agreement provides that the indemnity obligations and the insurance obligations "are separate and distinct duties" and the insurance obligation is enforceable "even if one or more of the indemnity provisions are held by a court to be unenforceable."

In ruling on this issue, the district court stated that "the agreement expressly entitles Era to additional insured status on whichever policies [HES]

_____

[5]  HES also sought additional insured status in the trial court, which held that HES was not entitled to such status, as HES was not part of the group entitled to additional insured status under the terms of the agreement. The parties raise the additional insured status issue only as to Era and Rowan's entitlement to additional insured status.

13

obtained to insure its indemnity obligations under the Rowan/[HES] Agreement." The district court nonetheless ruled on equitable grounds that Era should not receive indemnification via the additional insured provisions. The district court stated that "the indemnity obligations of the parties have been rendered nugatory by Era's execution of two potentially conflicting agreements. It would be unfair to allow Era to receive indemnification via the additional insured provisions when its obligations under a separate agreement preclude it from receiving indemnification on the claims at issue."

In *Diamond Offshore*, this court considered a party's argument that an insurance provision only created a contingent obligation designed to assure performance of the reciprocal indemnity provision. *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 550 (5th Cir. 2002). The court agreed with the district court's holding that "the insurance provision created an obligation independent of the reciprocal indemnity provision." *Id.* The insurance and indemnity provisions, therefore, should have been applied independently.

In this case, the language of the Rowan/HES Agreement provides that the insurance provisions and indemnity provisions are separate and distinct. We must therefore consider whether the separate and distinct insurance and indemnity provisions in the Rowan/HES Agreement provide additional insured status to Era and Rowan for the liability arising out of the underlying claims. Paragraph 3[6] in the Rowan/HES Agreement provides the following regarding indemnity:

> Contractor shall at all times be responsible for and hold harmless and indemnify [Rowan] from and against all claims arising in connection herewith in favor of contractor, its parent, subsidiary and affiliated companies, . . . on account of illness, injury or death of contractor's group or damage to or loss of property owned, rented

---

[6] This paragraph was in all-caps font, which we have omitted.

14

or provided by contractor's group. If it is judicially determined that the monetary limits of insurance required under this agreement or of the indemnities voluntarily assumed under this paragraph (which contractor hereby agrees will be supported either by available liability insurance, under which the insurer has no right of subrogation against company, or voluntarily self-insured, in part or in whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

Paragraph 6 in the same agreement requires each party to maintain four types of insurance coverage. Paragraph 6(b)(2) requires the following endorsement to be part of the four named insurance policies: "To the extent such party has assumed liability hereunder, naming the other party and its parent, subsidiary and affiliated companies as an additional insured, except as to statutory workers' compensation . . . ." Paragraph 6(d) makes clear that the indemnity obligations and the insurance obligations are separate and distinct duties.

> Notwithstanding any other provisions of this Agreement to the contrary, the parties hereby acknowledge and agree that the indemnity obligations and the insurance obligations set forth herein are separate and distinct duties under this Agreement. The parties further acknowledge and agree that the indemnity provisions of this Agreement shall not limit, restrict or alter the insurance obligations of this Agreement, even if one or more of the indemnity provisions are held by a court to be unenforceable.

Importantly, Era and Rowan are not simply asking this court to determine whether they are entitled to additional insured status under the four types of named insurance required under Paragraph 6(a) of the Rowan/HES Agreement. Rather, Era and Rowan seek additional protection as additional insureds to the full extent of its indemnity protection in Paragraph 3 based on the language in Paragraph 6(b)(2) which provides "[t]o the extent such party has assumed liability hereunder, naming the other party and its parent, subsidiary and affiliated companies as an additional insured . . . ." We find no such obligation.

15

First, the indemnity provision in Paragraph 3 contains its own insurance obligation, and there is no requirement that HES name Era and Rowan as additional insureds on any insurance obtained pursuant to Paragraph 3 of the agreement. Second, the preface to Paragraph 6(b) limited the requirement to name Era or Rowan as additional insured to the four insurance policies named in Paragraph 6(a). Paragraph 6(d) expressly provides that the indemnity and insurance obligations are separate and distinct. It is, therefore, contrary to the plain terms of the agreement to incorporate the additional insured obligation in the insurance provision into the indemnity obligation.

The district court did not address what, if any, coverage might be available to Era or Rowan as additional insureds under the policies HES was obligated to provide under Paragraph 6(a). Accordingly, we remand that issue to the district court for it to consider that question.

## CONCLUSION

We REMAND the sole issue regarding what, if any, coverage might be available to Era or Rowan as additional insureds under the policies HES was obligated to provide under Paragraph 6(a) of the Rowan/HES Agreement. We otherwise AFFIRM the district court's judgment.