REVISED APRIL 22, 2010
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 5, 2010

Lyle W. Cayce
Clerk

No. 09-50047

DAVID BRIAN JENNINGS,

Plaintiff - Appellee

v.

RISSIE OWENS, In her official capacity as Chairperson of the Texas Board of Pardons and Paroles; STUART JENKINS, In his official capacity as Director of the Parole Division of the Texas Department of Criminal Justice; IVY ANDERSON-YORK, In her official capacity as Director Supervisor of Region I of the Parole Division of the Texas Department of Criminal Justice; ERNESTO ALVAREZ, In his official capacity as Parole Officer, within Region I of the Parole Division of the Texas Department of Criminal Justice; LINDA MCCARVER, In her official capacity as Supervisor of Parole Officers within Region I of the Parole Division of the Texas Department of Criminal Justice,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas

Before KING, BARKSDALE, and ELROD, Circuit Judges.

KING, Circuit Judge:

Texas parolee David Jennings sued officials from the Texas Board of Pardons and Paroles and the Texas Department of Criminal Justice for procedural due process violations after the Board of Pardons and Paroles imposed sex offender special conditions on his parole. The district court granted

summary judgment for Jennings, ordering that the sex offender conditions be removed from his parole. The Texas officials appeal. We REVERSE.

## I. BACKGROUND

Appellee David Jennings was convicted in Texas state court in 1979 of aggravated kidnaping, a sex offense.[1] He pleaded guilty and stipulated to the fact that he "abducted and restrained [the victim] with the specific intent to facilitate the commission of a felony offense, namely, indecency with a child, and with the specific intent to . . . violate and abuse [the victim] sexually." Jennings was fifteen years old at the time of the underlying offense, and the victim was an eight-year-old boy who lived across the street from Jennings. Jennings was certified as an adult and sentenced to eight years' imprisonment. According to Jennings's deposition testimony in this case, he lured the victim into his car, drove approximately 50 miles to a motel, and rented a room, where the victim performed oral sex on Jennings. About an hour later, the two got back into Jennings's car, where the victim undressed. After driving a few miles to a rural area, Jennings stopped; the victim got out of the car and refused to get back in, whereupon Jennings drove away, leaving the victim naked by the side of the road. Jennings was paroled in 1983.

In 1984, Jennings's parole was revoked after he pleaded guilty to false imprisonment. Although no specific findings of fact were entered, the probable cause affidavit describes the underlying facts. The affidavit states that Jennings (then twenty-one years old) asked a thirteen-year-old boy if he would mow Jennings's grandmother's yard. The boy agreed, and he got in a car with Jennings. Jennings drove for some time, but when he stopped the car at a gas

---

[1] Texas law defines a "sex offender" as "a person who has been convicted or has entered a plea of guilty for . . . Aggravated Kidnapping[], if the person committed the offense with the intent to violate or abuse the victim sexually." Tex. Code Crim. Proc. Ann. art. 42.12 § 9A(2)(A) (Vernon 2005). The 2005 version of the Texas law is applicable in this case, as the complained-of parole conditions were imposed on August 4, 2005.

station, the boy got out of the car and told the station attendant that he did not know Jennings and did not want to go with him. When Jennings tried to get the boy back in the car, the attendant refused to let him leave with the boy.

Jennings was paroled again in 1985; soon after, in 1986, his parole was revoked once more after he pleaded guilty to forgery. Jennings's sentence for the aggravated kidnaping was finally discharged in 1988. Shortly after his release, Jennings pleaded guilty to debit card abuse in 1989. He received a sentence of 25 years' imprisonment, due to enhancements for the aggravated kidnaping and forgery convictions.

In 1991, Jennings was released on parole. At that time, he was placed on the Sex Offender Caseload; as a consequence, sex offender conditions were imposed on his parole.[2] His parole was revoked in 1998 after a hearing where the parole board determined that Jennings had violated several of the sex offender conditions on his parole. Specifically, the parole board found that Jennings had violated prohibitions against: having contact with juveniles; entering into a relationship with a person with a minor child; accepting employment involving contact with a juvenile; and changing his residence without prior permission.

On May 23, 2005, Jennings was again released on parole. In August 2005, Jennings's parole officer requested that Special Condition X—conditions tailored for sex offenders—be imposed on Jennings's parole; the parole board granted the request by a majority vote. The file that the parole board considered included

---

[2] The conditions included: not accepting employment that involves unsupervised contact with juveniles; not engaging in any type of unsupervised contact with juveniles; not being alone with juveniles; not becoming involved in a dating, marriage, or corresponding platonic relationship with an adult who has juvenile children without prior approval; not changing residence or employment without prior approval; and enrolling and participating in sex offender counseling. In 1994, Jennings's parole conditions were slightly modified to add the following restrictions: he could not reside with juveniles; he had to be available for scheduled home visits; and he had to obtain permission to travel outside his county of residence.

his convictions for debit card abuse, forgery by passing, and aggravated kidnaping, but not false imprisonment. The file also contained a brief factual description of the aggravated kidnaping offense.

Jennings refused to acknowledge the new conditions and moved before the parole board for a modification of his conditions of parole, specifically challenging the following three conditions:

> [The] offender shall
>
> Enroll in and participate in a treatment program for sex offenders as directed by the supervising parole officer. Offenders serving a sentence for an offense as defined in [TEXAS GOVERNMENT CODE ANNOTATED §] 508.187(a),[3] against a victim who is under 17, shall receive psychological counseling until such time as the treatment provider, in conjunction with the Parole Division, determines that treatment is no longer required. The Parole Division will submit a recommendation to withdraw the requirement to attend psychological counseling to the appropriate board panel in those instances where such action is deemed appropriate. . . .[4]
>
> Not become involved in dating, marriage, or [a] platonic relationship with any person who has children 17 years of age or younger unless approved in writing by offender's supervising parole officer. . . .
>
> Not own, maintain, or operate computer equipment without a declared purpose and the written authorization of the offender's supervising parole officer. If authorization is granted, the offender shall submit to a search of the computer hardware, software, files, and peripherals by any [Texas Department of Criminal Justice] parole or law enforcement official. Offender shall allow the

---

[3] Section 508.187(a) refers to several TEXAS PENAL CODE sections, including § 20.04(a)(4), which penalizes aggravated kidnaping when committed "with the intent to violate or abuse the victim sexually." TEX. GOV'T CODE ANN. § 508.187(a) (Vernon 2005) (citing TEX. PENAL CODE ANN. § 20.04(a)(4)).

[4] The Texas sex offender therapy program includes treatment with a penile plethysmograph; that is, a "strain gauge which is strapped to an individual's genitals while sexually explicit pictures are displayed in an effort to determine his sexual arousal patterns." Coleman v. Dretke (Coleman I), 395 F.3d 216, 223 n.28 (5th Cir. 2004) (internal quotation marks omitted).

supervising officer to install a specific computer program designed to track computer activity.

The parole board denied his motion to modify his parole conditions, and Jennings brought suit against the parole board[5] in federal district court under 42 U.S.C. § 1983. Specifically, he argued that the imposition of the three sex offender parole conditions violated his right to procedural due process, as he did not receive notice or a hearing prior to imposition of the conditions.[6] The district court agreed and granted summary judgment in his favor, finding that Jennings had a liberty interest in being free from the three parole conditions, as each constituted a dramatic departure from the basic conditions of release. The district court was particularly influenced by three facts: (1) Jennings was a minor at the time of his conviction for aggravated kidnaping; (2) Jennings committed the sex offense nearly thirty years before his 2005 release on parole; and (3) the sex offender conditions were placed on Jennings when he was on parole for debit card abuse—a non-sex-related offense. The district court also found that the parole board had not afforded Jennings sufficient process before imposing the sex offender conditions and concluded that "[s]imply classifying someone as a sex offender does not provide the person with any notice that their parole conditions would be radically changed at any later date." The district court declared the three sex offender conditions unconstitutional as applied to Jennings and ordered that the three conditions be removed from his parole.

---

[5] Specifically, Jennings sued a number of employees of the Texas Board of Pardons and Paroles and the Texas Department of Criminal Justice (TDCJ) in their official capacities. The named defendants are: Rissie Owens, Chairperson of the Texas Board of Pardons and Paroles; Stuart Jenkins, Director of the Parole Division of TDCJ; Ivy Anderson–York, Director Supervisor of Region I of the Parole Division of TDCJ; Ernesto Alvarez, Parole Officer within the Parole Division of TDCJ; and Linda McCarver, Supervisor of Parole Officers within the Parole Division of TDCJ. For simplicity, we refer to the named defendants as "the parole board" for the remainder of this opinion.

[6] The parole board acknowledges that Jennings did not receive notice or a hearing before the sex offender conditions were imposed on his parole in August 2005.

## II. JURISDICTION AND STANDARD OF REVIEW

The parole board timely appealed, and appellate jurisdiction is proper under 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo. LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 386 (5th Cir. 2007). Summary judgment is appropriate when "the discovery and disclosure materials on file[] and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Breaux v. Halliburton Energy Servs., 562 F.3d 358, 364 (5th Cir. 2009). "A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party." Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008). This court must take all the facts and evidence in the light most favorable to the parole board, the non-moving party. Breaux, 562 F.3d at 364.

## III. DISCUSSION

The parole board argues that the district court made two erroneous conclusions: first, that Jennings retained a liberty interest in remaining free of sex offender parole conditions after his 1979 conviction for aggravated kidnaping; and second, that Jennings did not receive the minimum process due him before imposition of the parole conditions. According to the parole board, Jennings did not retain a post-conviction liberty interest because he was already labeled a sex offender after his 1979 conviction; any parole conditions could not impose any additional stigma upon him. The parole board also argues that due process only requires that Jennings have notice and the opportunity to dispute the label of sex offender, not the specific conditions imposed on his parole—therefore, his 1979 conviction for a sex offense fulfilled the requisites of due process. Jennings contends that the district court correctly found that he retained a liberty interest in being free from the three sex offender conditions, as his only sex offense conviction was in 1979, for conduct that he committed at

the age of 15, and the underlying crime for which he was currently on parole—debit card abuse—was not a sexual offense.

Procedural due process under the Fourteenth Amendment is implicated where an individual is deprived of life, liberty, or property, without due process of law. U.S. CONST. amend. XIV, § 1, cl. 3. Here, Jennings has not been deprived of life or property; therefore, his claim hinges on whether he has been deprived of a liberty interest without adequate procedural protections. Liberty interests may be created under either federal law or state law. See Sandin v. Conner, 515 U.S. 472, 478–79 & n.4 (1995). The district court found that Jennings retained a federally created liberty interest.[7]

Supreme Court precedent on the dictates of procedural due process in the context of parole is sparing. The Court has found that prisoners do not have a liberty interest in the granting of parole, Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 11 (1979), but a liberty interest is implicated where a state seeks to revoke parole, Morrissey v. Brewer, 408 U.S. 471, 482 (1972). When evaluating the constitutionality of parole conditions, the Fifth Circuit has reasoned by analogy to Supreme Court cases involving conditions of confinement. See Coleman v. Dretke (Coleman I), 395 F.3d 216, 221–24 (5th Cir. 2004) (relying on Vitek v. Jones, 445 U.S. 480 (1980), and Sandin—both cases involving challenges to conditions of confinement—in formulating standard for determining whether liberty interest exists in parole conditions context).

In Vitek v. Jones, the Supreme Court found that a liberty interest was implicated when a Nebraska state prisoner was transferred from prison to a

---

[7] Jennings argues for the first time on appeal that, in addition to a federally created interest, Texas law creates a liberty interest that protects parolees from post-release modifications of parole conditions. This argument has been waived and we decline to consider it. See Brown v. Ames, 201 F.3d 654, 663 (5th Cir. 2000) ("To avoid being waived, an argument must be raised to such a degree that the trial court may rule on it." (quotation marks omitted)).

mental hospital. 445 U.S. at 494. There, the Court held that "changes in the conditions of confinement having a substantial adverse impact on the prisoner are not alone sufficient to invoke the protections of the Due Process Clause." Id. at 493. The Court noted that "commitment to a mental hospital 'can engender adverse social consequences to the individual' and that 'whether we label this phenomen[on] "stigma" or choose to call it something else . . . we recognize that it can occur and that it can have a very significant impact on the individual.'" Id. at 492 (quoting Addington v. Texas, 441 U.S. 418, 425–26 (1979)) (alteration omitted). In addition, the consequences of commitment to a mental institution imposed "consequences [that] are qualitatively different from the punishment characteristically suffered by a person convicted of a crime." Id. at 493. Based on these two points—stigmatizing social consequences and qualitative differences—the Court determined that due process protections were required. Id. at 494; see also Sandin, 515 U.S. at 484 (declining to find liberty interest where prisoner was placed in solitary confinement without process, as this was not an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life").

In Coleman I, we considered a procedural due process challenge to the imposition of Texas sex offender parole conditions. 395 F.3d at 219. There, Coleman was indicted on charges of aggravated sexual assault of a child and indecency with a child by contact, but he ultimately pleaded guilty to misdemeanor assault, and the sexual charges were dropped. Id. About a month after his release on parole, and without giving Coleman advance notice or a hearing, the parole panel imposed additional conditions on his parole, including the requirements that he register as a sex offender and participate in sex offender therapy. Id. Coleman challenged the imposition of the conditions as violating his right to procedural due process. Id. In determining that Coleman had a liberty interest, we analogized to Vitek and noted that the Supreme Court

8

relied on "the combination of stigma and compelled behavior modification treatment" to find a liberty interest in that case. Id. at 222. We found the Texas sex offender therapy program to be "'qualitatively different' from other conditions which may attend an inmate's release," as it involved mandatory behavior modification[8] much like that described in Vitek. Id. at 223. We also noted that, as Coleman had never been convicted of a sex offense, he had not "had an opportunity to contest his sex offender status" and therefore the parole conditions caused stigma. Id. at 221. Accordingly, we concluded that Coleman had a liberty interest entitled to the protection of procedural process, as the state had "imposed stigmatizing classification and treatment on Coleman without providing him any process." Id. at 223.

We expanded on the holding that Coleman had suffered from stigma in a per curiam opinion denying a motion for rehearing en banc. Coleman v. Dretke (Coleman II), 409 F.3d 665 (5th Cir. 2005) (per curiam) (adopting and expanding upon the reasoning of Coleman I). We noted that Fifth Circuit precedent on stigma states that "a statement causes stigma if it is both false and implies that the plaintiff is guilty of serious wrongdoing." Id. at 668 (citing Vander Zee v. Reno, 73 F.3d 1365, 1369 (5th Cir. 1996)). "[B]y requiring [Coleman] to attend sex offender therapy, the state labeled him a sex offender—a label which strongly implies that [he] has been convicted of a sex offense and which can undoubtedly cause 'adverse social consequences.'" Id. at 668 (quoting Vitek, 445 U.S. at 492). "'We can hardly conceive of a state's action bearing more stigmatizing consequences than the labeling of a prison inmate as a sex offender.'" Id. (quoting Neal v. Shimoda, 131 F.3d 818, 829 (9th Cir. 1997)). The conclusion that the sex offender therapy condition stigmatized Coleman rested

---

[8] Coleman I found that the Texas sex offender therapy program involved mandatory behavior modification insofar as it treated offenders with a penile plethysmograph. Coleman I, 395 F.3d at 223.

heavily upon the fact that he had never been convicted of a sex offense—therefore, the label "sex offender" was false as applied to him. Id.; see Vander Zee, 73 F.3d at 1369 (describing falsity as a "necessary element" for a showing of stigma).[9]

Here, the imposition of the three sex offender conditions—the sex offender treatment program, the relationship restriction, and the computer-use restriction[10]—would indeed cause stigma, if they were imposed on an individual who, like Coleman, had never been convicted of a sex offense. However, Jennings has been convicted of a sex offense. He pleaded guilty to aggravated kidnaping and stipulated to the fact that he committed the kidnaping with the

---

[9] Jennings interprets the parole board as advocating for the use of the "stigma-plus-infringement" test used in reputational harm cases. He argues that this standard is not applicable to procedural due process claims, citing to Connelly v. Comptroller of the Currency, 876 F.2d 1209 (5th Cir. 1989), and he contends that the liberty interests he has asserted are not derived from allegations of reputational harm. However, as discussed above, both Coleman opinions rely on Supreme Court precedent in the form of Vitek and Sandin for the proposition that procedural due process claimants must establish stigma—in addition to qualitatively different conditions—to claim an unconstitutional infringement of a liberty interest, regardless of whether reputational harm is alleged. Jennings does not acknowledge or attempt to distinguish the Coleman cases' requirement of "stigma" in the sex offender parole conditions context.

Furthermore, this approach is also followed by the Ninth Circuit. In Neal v. Shimoda, two inmates—one with a prior sex offense conviction, and one without—challenged Hawaii's requirement that inmates labeled as sex offenders must complete sex offender treatment before becoming eligible for parole. 131 F.3d at 831. The Ninth Circuit found that the inmate who had never been convicted of a sex offense did indeed have a liberty interest in not being labeled a sex offender. Id. at 830. In reaching this conclusion, the Ninth Circuit analogized to Vitek and found that "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program . . . create the kind of deprivations of liberty that require procedural protections." Id. However, as to the second inmate, who had a prior sex offense conviction, no procedural due process violation occurred. Id. at 831. Jennings fails to convince us that the standard from the Coleman cases and Neal is inapplicable.

[10] Coleman I held that the sex offender therapy program, to the extent it utilizes penile plethysmograph treatment, is "'qualitatively different' from other conditions which may attend an inmate's release." 395 F.3d at 223. We expressly do not rule on whether the relationship restriction or the computer-use restriction are "qualitatively different" from regular parole conditions, as these conditions do not impose new or additional stigma on Jennings.

intent to commit indecency with a child and with the intent to violate and sexually abuse his eight-year-old victim. By imposing sex offender conditions on Jennings, the parole board admittedly labels him as a sex offender. This label is not false as applied to Jennings; it accurately reflects Jennings's status, and he had a full and fair opportunity to contest that status. See Coleman I, 395 F.3d at 221 (relying on fact that Coleman never had opportunity to contest his sex offender status). Therefore, Jennings has not shown that he has a liberty interest that was infringed in violation of his right to procedural due process when the parole board imposed sex offender special conditions on his parole.[11]

## IV. CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for proceedings consistent with this opinion.

---

[11] As mentioned above, Jennings argues (and the district court found) that three facts—(1) Jennings was only 15 years old when he committed the aggravated kidnaping; (2) Jennings's aggravated kidnaping conviction was entered in 1979, nearly 30 years before his 2005 release on parole; and (3) Jennings's 2005 release on parole was from a conviction for debit card abuse, a non-sexual offense—support the conclusion that the imposition of sex offender conditions was a "dramatic departure," i.e., a qualitative difference, from Jennings's sentence for debit card abuse. Notably, Jennings does not make the argument that these three facts impact the stigma analysis required by Coleman; therefore, we do not consider it.