# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 11, 2025

Lyle W. Cayce
Clerk

No. 24-30508

_____

ENSCO Offshore, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Cantium, L.L.C.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-371

_____

Before Elrod, *Chief Judge*, Higginbotham, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

In this breach of contract action, Cantium, LLC appeals the district court's entry of summary judgment in favor of ENSCO Offshore, LLC, based on its finding that the parties mutually waived recovery of consequential damages, including for "gross negligence and/or willful misconduct," in the contract. We AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30508

I

A

In a Master Offshore Drilling Services Contract executed on May 9, 2022, ENSCO agreed to provide Cantium drilling services for its offshore oil and gas wells, including the Kings Hill well near the coast of Louisiana. ENSCO began work in November 2022. The operations were expected to take around 250 days but lasted 397 days.

The contract required Cantium to pay ENSCO's invoices for its services within thirty days of receipt. From November 2022 to July 2023, ENSCO sent Cantium monthly invoices, which it paid timely. Beginning in August 2023, however, Cantium failed to pay ENSCO's invoices. In September 2023, the Kings Hill well was "lost,"[1] but ENSCO redrilled the well. Cantium did not pay any of ENSCO's invoices for work performed between August 2023 and December 2023.

On February 9, 2024, ENSCO sued Cantium for the unpaid invoices, asserting claims for breach of contract, quantum meruit, and promissory estoppel. Cantium counterclaimed for breach of contract and declaratory judgment, alleging that it was entitled to consequential damages due to ENSCO's gross negligence and willful misconduct that caused delays. It sought over $22.8 million for the loss of the Kings Hill well, and over $4.5 million in other costs, including spread costs.

B

ENSCO moved for partial summary judgment on Cantium's breach of contract claim, arguing that the parties had mutually waived all claims for consequential losses, including spread costs, in Section 15.21 of the drilling

_____

[1] A well is "lost" when unexpected fluids cause it to lose integrity and collapse.

No. 24-30508

contract.[2] It claimed that under Section 15.6, Cantium's sole remedy for the lost Kings Hill well was redrilling.[3] Cantium responded that Section 15.21 did

_____

[2] Section 15.21, in relevant part, states:

**15.21. LIMITATION ON CLASSES OF DAMAGES.** Operator and Contractor mutually waive and release, on behalf of themselves and their respective group, all of the following claims for damages arising out of this Contract, whether such claims are made in connection with an indemnity specified in this Section 15, a breach of any obligation under this Contract or any other claim:

(A) Consequential loss under applicable law (whether direct or indirect) and all of the following (whether or not considered consequential loss under applicable law):

(1) Lost profits.

(2) Loss of production, including production of petroleum or petroleum products.

(3) Loss of prospective economic advantage or benefit.

(4) Loss of business opportunity.

(5) Costs of persons hired by either party to provide vessels, materials, and services or work in support of the services, including those costs that are sometimes referred to as "spread costs[,]" but not including incremental costs incurred by Operator for the benefit of Contractor and at Contractor's request, such as fuel or other logistical support that Operator is not explicitly required to provide under this Contract.

[3] Section 15.6 states:

**15.6. DAMAGE TO HOLE, STRATA, FORMATION OR RESERVOIR.** Notwithstanding anything to the contrary in this Contract including Sections 15.2 and 15.4, if damage to, loss of, or impairment of any property right in or to the well, hole, strata, formation or reservoir, on which the services are being performed, Operator (A) releases Contractor Group from claims by Operator for that damage or loss, and (B) indemnifies Contractor Group against that damage or loss and against claims against any member of Contractor Group by any member of Operator Group for that damage or loss. This Section 15.5 does not,

not apply due to ENSCO's gross negligence or willful misconduct, citing Section 15.16.[4]

The district court granted ENSCO's motion and dismissed Cantium's counterclaims. Cantium timely appealed.

## II

We review the district court's grant of summary judgment *de novo*. *Earnest v. Palfinger Marine USA, Inc.*, 90 F.4th 804, 808 (5th Cir. 2024). Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Catalyst Strategic Advisors, L.L.C. v. Three Diamond Cap. Sbc, L.L.C.*, 93 F.4th 870, 874 (5th Cir. 2024) (quoting Fed. R. Civ. P. 56(a)). "Whether there is a plain meaning to a contract or whether an ambiguity exists is a legal question also subject to *de novo* interpretation." *In re Speedcast Int'l Ltd.*, 76 F.4th 372, 376 (5th Cir. 2023) (citation modified); *see also Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 293 (5th Cir. 2007).

---

however, relieve Contractor from its obligation to redrill a well at the redrill rate as provided in Section 9.1(F) when such rate is applicable, which shall be Operator's sole and exclusive remedy.

[4] Section 15.16 states:

**15.16.** Notwithstanding anything to the contrary in this Agreement, Operator shall have no obligation under this Agreement to defend, protect, indemnify and hold harmless Contractor Group for any losses as a result of any member of Contractor Group senior supervisory personnel's gross negligence and/or willful misconduct arising out of the performance or non-performance of any obligation and/or of services under this Contract or any Service Order.

III

Cantium argues that the district court erred because the waiver of damages in Sections 15.6 and 15.21 is subject to an exception in Section 15.16 for gross negligence or willful misconduct. We disagree.

Because this appeal turns on interpreting a maritime contract, general contract principles from federal admiralty law apply. *Barrios v. Centaur, L.L.C.*, 121 F.4th 515, 518 (5th Cir. 2024). We must discern the parties' intent based on the language of the contract. *East v. Premier, Inc.*, 98 F. App'x 317, 320 (5th Cir. 2004). The relevant provisions should be read as a whole, and words given their plain meaning, unless the contract is ambiguous. *La. Land & Expl. Co. v. Offshore Tugs Inc.*, 23 F.3d 967, 969 (5th Cir. 1994); *see also Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004) (stating that each term "should be given full effect" and that "none are deemed superfluous").

In Section 15.21, the parties "mutually waive and release" certain categories for damages; they explicitly list "consequential loss" (which is defined as including "spread costs") as one of those categories. In Section 15.6, Cantium releases ENSCO from any claims arising from a damaged or "lost" well, but ENSCO is "obligat[ed] to redrill a well at the redrill rate . . . , which shall be [Cantium]'s sole and exclusive remedy." This language forecloses additional damages, even if the loss resulted from ENSCO's gross negligence or willful misconduct. *See Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 360 F. Supp. 3d 494, 512 (N.D. Tex. 2019), *aff'd*, 954 F.3d 804 (5th Cir. 2020) (concluding that contractual remedy as "sole and exclusive" meant it was the party's only remedy).

The plain language of Sections 15.6 and 15.21 does not support Cantium's reading of the drilling contract. The phrase "gross negligence

and/or willful misconduct," which appears elsewhere in the drilling contract (including Section 9.1(F)[5]), does not appear in either section. Neither explicitly incorporates the exclusion for "gross negligence and/or willful misconduct" in Section 15.16, which is an indemnification provision that sets out the parties' obligations in actions brought by third parties.[6]

Section 15.21 prohibits recovery of the damages Cantium seeks by its counterclaim, regardless of whether those damages are the result of ENSCO's "gross negligence and/or willful misconduct." The district court did not err.

Alternatively, Cantium contends we should find that the relevant provisions of the drilling contract are ambiguous. We disagree. *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004); *see also Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) (finding a contract is not ambiguous merely because the parties disagree about its meaning).

## IV

We AFFIRM the dismissal of Cantium's counterclaim.

---

[5] Section 9.1(F) requires ENSCO to redrill a hole "which is lost as a result of [ENSCO]'s Gross Negligence or Willful Misconduct."

[6] Citing the language, "[n]otwithstanding anything to the contrary" in Section 15.16, Cantium argues that the "gross negligence and/or willful misconduct" exception applies to other provisions in the contract. A "notwithstanding" clause merely declares "that its provision supersedes all other contractual provisions," it does not express any intention for its provisions to be read in elsewhere in the contract. *See Cleere Drilling Co. v. Dominion Explor. & Prod., Inc.*, 351 F.3d 642, 649 n.13 (5th Cir. 2003).

No. 24-30508

Jennifer Walker Elrod, *Chief Judge*, concurring:

I fully concur in the court's opinion. I write separately to highlight an unsettled question in our law of maritime contract pertaining to exemptions from liability for acts of gross negligence. Here, Cantium, L.L.C. argued, that, under maritime law, contracts indemnifying a party's own gross negligence are void as against public policy. For the reasons our opinion states, this argument fails on the best reading of the contract. Accordingly, this is not the case to address this important question of maritime law. When the proper case arises, we should address the question to provide predictability for those entering maritime contracts and clarity for district courts in our circuit.

Neither the Supreme Court nor our court has resolved whether parties are permitted to contractually indemnify parties for claims of gross negligence. *See* Kenneth G. Engerrand, *Indemnity for Gross Negligence in Maritime Oilfield Contracts*, 10 Loy. Mar. L.J. 319, 355 (2012). Our circuit has commented on the question at various points, though some of these opinions can be read to be in tension with one another. The confusion in our case law has, unsurprisingly, led district courts within the circuit to reach different conclusions on the question whether maritime contracts that limit the parties' liability are valid. Engerrand, *supra*, at 335–43 (collecting and discussing district court cases). In the appropriate case, we should provide clarity, especially given that contractual indemnification for gross negligence is a common feature of maritime contracts. *See id.* at 355.

The lack of clarity on the matter is best exemplified by two cases the parties cite. One is *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401 (5th Cir. 1982). The other is *Coastal Iron Works Inc. v. Petty Ray Geophysical, Div. of Geosource, Inc.*, 783 F.2d 577 (5th Cir. 1986).

No. 24-30508

*Todd Shipyards* involved a ship-repair contract containing a red-letter clause that limited the shipyard's liability to $300,000.[1]  674 F.2d at 409. The district court determined that this $300,000 limitation was invalid because the ship repairer was guilty of gross negligence. *Todd Shipyards Corp. v. Turbine Service, Inc.*, 467 F. Supp. 1257, 1298–99 (E.D. La. 1978).  The issue arose on appeal whether the law of maritime contract permits such limitations of liability for gross negligence.  *Id.* at 410.  We did not have to reach the question because we concluded that the district court erred in deciding that the ship repairer grossly negligent.  *Id.* at 411.  Still, the opinion states that that gross negligence "will invalidate an exemption from liability." *Id.* at 411 (citing 6A Corbin on Contracts § 1472 (1964 ed.)).[2]  At least two other circuits and several district courts in our circuit have looked to and approvingly cited this language from *Todd Shipyards*.  *See, e.g., La Esperanza de P.R., Inc. v. Perez y Cia. De Puerto Rico, Inc.*, 124 F.3d 10, 19–20 (1st Cir. 1997); *Royal Ins. Co. of Am. v. Sw. Marine,* 194 F.3d 1009, 1015–16 (9th Cir. 1999); *In re Marquette Transp. Co. Gulf-Inland, LLC,* No. 13-5114, 2016 WL 1587382, at *4 (E.D. La. Apr. 20, 2016); *Nexen Petroleum U.S.A., Inc. v. Sea*

---

[1] Red-letter clauses are commonly included in marine service, shipbuilding, and ship repair contracts.  1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 5:16 (7th ed. Nov. 2025 update).  Generally, these clauses are written to "(1) exclude express and implied warranties; (2) limit the time for filing suit; (3) place a ceiling on damage exposure; (4) limit liability to the cost of repair or replacement of the defective material or workmanship; (5) exclude consequential damages such as lost profits, lost charter hire; (6) exclude specific risks such as liability for pollution, third party claims, and force majeure occurrences; and (7) exclude the cost of defense and attorneys' fees." *Id.*

[2] The cited portion of Professor Corbin's treatise states in full: "It is generally held that those who are not engaged in public service may properly bargain against liability for harm caused by their ordinary negligence in performance of contractual duty; but such an exemption is always invalid if it applies to harm willfully inflicted or caused by gross or wanton negligence." 6A Arthur L. Corbin, Contracts § 1472 (1964).

No. 24-30508

*Mar Div. of Pool Well Servs. Co.,* No. 06-3043, 2007 WL 2811001, at *7 (E.D. La. Sept. 25, 2007).

Just a couple of years after *Todd Shipyards*, we decided *Coastal Iron Works*. In that opinion, we included language that suggested that parties can, in fact, contract to limit liability for gross negligence. *Coastal Iron Works*, like *Todd Shipyards*, involved damage to a vessel during repairs and a red-letter clause that limited the repairer's liability to $300,000. 783 F.2d at 580–81. Like in *Todd Shipyards*, we did not reach the issue of limiting liability for gross negligence. *Id.* at 582. Still, the Fifth Circuit, in affirming the district court's finding of negligence, addressed the red-letter clause and stated that the clause was not void as a matter of public policy because the "parties to the contract have more or less equal bargaining strength." 783 F.3d at 583 (citing *Todd Shipyards*, 674 F.2d at 410). The opinion did not reconcile any apparent tension with *Todd Shipyards*, by, perhaps, clarifying that such releases from liability are permissible between sophisticated parties for actions of negligence, but not gross negligence. Accordingly, district courts have at times followed *Coastal Ironworks*'s guidance without discussing how this instruction coheres with our opinion in *Todd Shipyards*. *See, e.g.*, *Constance Joy II, LLC v. Stewart & Stevenson FDDA LLC,* No. 4:20-cv-02967, 2025 WL 2529645, at *41 (S.D. Tex. Sept. 3, 2025); *Eni US Operating Co. v. Transocean Offshore Deepwater Drilling Inc*, No. 4:13-cv-03354, 2017 WL 10647751, at *14 (S.D. Tex. Dec. 8, 2017).

This question is not esoteric. It has particular significance in the maritime oilfield contracts that "allocate the risks equitably to each party based upon their substantive contributions and the relative benefits received under the contract so that the party in the best position to avoid the risk and insure or bear the burden is the party that assumes the risk." Engerrand, *supra*, at 357. These contracts provide the legal framework for offshore drilling operations pose potentially billions of dollars in liabilities. *Id.* at 364.

No. 24-30508

It very well may be that sophisticated parties with equal bargaining power may contractually release each other from liability, including liability for gross negligence.[3] It also may be that while releases between contracting parties is permissible, indemnifying parties for torts committed against third parties is void for public policy. When addressing this issue, we must be cognizant of the substantive differences between admiralty and state law.[4] *See id.* at 326. We owe it to both those entering maritime contracts and district courts to provide greater clarity regarding the validity of these indemnifications and limitations of liability for gross negligence.

---

[3] Other relevant discrepancies exist in our maritime case law and may need to be addressed, such as the circuit's definition of "gross negligence." *See* C. Bowman Fetzer, Jr., *Navigating Through the Variations and Admissibility of Conduct Required to Support Punitive Damages at Sea*, 13 Loy. Mar. L.J. 27, 30–31 (2014).

[4] We have not always been clear when we have analyzed issues under state law versus admiralty. For example, in *Houston Exploration Co. v. Halliburton Energy Services, Inc.*, we introduced the case as one of admiralty before analyzing the case strictly under Louisiana tort law. 269 F.3d 528, 531–33 (5th Cir. 2001).